## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| KiOR, Inc.,[1] | Case No. 14-12514 (CSS) |
| Debtor. | **Re: D.I. 7** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363, AND 364 OF THE BANKRUPTCY CODE; (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (V) MODIFYING THE AUTOMATIC STAY; AND (VI) SCHEDULING A FINAL HEARING

Upon the motion dated November 9, 2014 (the "DIP Motion") of the debtor and debtor in possession (the "Debtor") in the above-referenced chapter 11 case (the "Case") seeking entry of an interim order (this "Interim Order") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 507, and 552 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), that, among other things:

(i)    authorizes the Debtor to obtain senior secured priming and superpriority postpetition financing, which if approved on a final basis will consist of incremental term loans in an aggregate principal amount not to exceed $15,000,000 at any time outstanding (the "DIP Facility") pursuant to the terms of (x) this Interim Order, (y) that certain *Senior Secured and*

---

[1]    The Debtor and the last four digits of its taxpayer identification number are: KiOR, Inc. (2233). The Debtor's mailing address is 13001 Bay Park Road, Pasadena, Texas 77507.

*Superpriority Financing Agreement*, dated as of November 9, 2014 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms and the terms of this Interim Order, the "DIP Credit Agreement"),[2] by and among the Debtor, Pasadena Investments, LLC, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"), and the other entities party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (the "DIP Lenders," and together with the DIP Agent and any other party to which DIP Obligations (as defined below) are owed, the "DIP Secured Parties"), in substantially the form attached to the DIP Motion, and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, the "DIP Loan Documents"), to: (A) fund, among other things, ongoing working capital, general corporate expenditures, and other financing needs of the Debtor, (B) fund certain payments required to provide adequate protection to the Prepetition Secured Parties (as defined below) as described below, (C) pay certain transaction fees and other costs and expenses of administration of the Case, and (D) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Agent and the DIP Lenders under the DIP Loan Documents and this Interim Order;

(ii)     approves the terms of the DIP Credit Agreement and the other DIP Loan Documents, authorizes the Debtor to execute and deliver, perform under, and be bound by the DIP Credit Agreement and the other DIP Loan Documents, and authorizes the Debtor to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Interim Order;

---

[2]     All capitalized terms used but not otherwise defined in this Interim Order shall have the respective meanings given to such terms in the DIP Credit Agreement. A copy of the DIP Credit Agreement is attached hereto as **Exhibit B**.

(iii)    grants (x) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, secured, binding, continuing, enforceable, fully perfected, and unavoidable first priority senior priming security interests in, and Liens (as defined in the DIP Credit Agreement) on, all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, which Liens shall be senior to the Prepetition Liens (as defined below) and shall be subject to any valid, enforceable, and non-avoidable liens that are (A) in existence on the Petition Date, (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) not Prepetition Liens (as defined below) (all such liens, collectively, the "Prepetition Non-Primed Liens"); and (y) to the DIP Secured Parties pursuant to section 364(c)(1) of the Bankruptcy Code superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtor's estate, now owned or hereafter acquired, including, without limitation, the Debtor's rights under section 506(c) of the Bankruptcy Code and the proceeds thereof (subject to entry of a Final Order);

(iv)    authorizes the Debtor to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including, without limitation, Cash Collateral in which the Prepetition Secured Parties (as defined below) and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise, and grants and provides the Prepetition Secured Parties (as defined below) the Prepetition Secured Parties' Adequate Protection (as defined below) as set forth herein;

(v)    modifies the automatic stay imposed by section 362(a) of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(vi)    authorizes the Debtor at any time prior to the earliest to occur of 11:59 p.m. prevailing Eastern time on December 8, 2014 (the "Interim Period Outside Date") and the entry of the Final Order (as defined herein) to borrow under the DIP Facility and use Cash Collateral in an aggregate outstanding amount for all such borrowings not to exceed $2,500,000;

(vii)    schedules a final hearing on the DIP Motion to be held on or prior to the Interim Period Outside Date (the "Final Hearing") to consider entry of a final order which grants all of the relief requested in the DIP Motion on a final basis and which final order shall be in form and substance (including, without limitation, with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or the Court) acceptable to the DIP Agent (the "Final Order"); and

(viii)    waives any applicable stay (including, without limitation, under Bankruptcy Rule 6004) and provides for immediate effectiveness of this Interim Order.

Having considered the DIP Motion, the DIP Credit Agreement, the *Declaration of Christopher A. Artzer in Support of Chapter 11 Petition and First Day Motions* (the "Artzer Declaration"), the Declaration of Alex C. Fisch of Guggenheim Securities, LLC (the "Fisch Declaration") and the evidence submitted or proffered at the hearing on this Interim Order (the "Interim Hearing"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), 4001(d), and 9014 and all applicable Local Rules, notice of the DIP Motion and the Interim Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); an Interim Hearing having been held and concluded on November 13, 2014; and it appearing that approval of the interim

4

relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtor, its creditors, its estate, and all parties in interest, and is essential for the continued operation of the Debtor's business; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.      **Petition Date**.  On November 9, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "Court").  The Debtor has continued in the management and operation of its business and properties as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (to the extent such a committee or other statutory committee is appointed, the "Committee"), trustee, or examiner has been appointed in the Case.

B.      **Jurisdiction and Venue**.  This Court has core jurisdiction over the Case, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue for the Case and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory or other predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and the Local Rules.

C.      **Notice**.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Interim Hearing and the emergency relief requested in the

---

[3]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

DIP Motion has been provided by the Debtor, whether by facsimile, electronic mail, overnight courier, or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Delaware (the "United States Trustee"), (ii) those entities or individuals included on the Debtor's list of 20 largest unsecured creditors, (iii) each of the Prepetition Secured Agents (as defined below), (iv) counsel to each of the Prepetition Secured Agents, (v) the DIP Agent, (vi) counsel to the DIP Agent, (vii) each of the financial institutions listed in the *Motion for Order (A) Authorizing Maintenance of Pre-Petition Bank Accounts and Cash Management System and Continued Use of Existing Business Forms, Books, and Records, and (B) Approving Investment Accounts and Procedures*, and (viii) all known parties asserting a lien against the DIP Collateral (as defined below), as reflected on Schedule 7.11 of the DIP Credit Agreement.

D.     **Debtor's Stipulations Regarding the Prepetition Secured Credit Facilities.** Without prejudice to the rights of parties in interest that are specifically set forth in Paragraph 6 of this Interim Order, the Debtor admits, stipulates, acknowledges, and agrees (Paragraphs D and E hereof shall be referred to collectively as the "Debtor's Stipulations") as follows:

(i)     First Lien Prepetition Secured Debt.  Pursuant to that certain Protective Advance Loan and Security Agreement, dated as of July 17, 2014 (as amended, restated, or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Loan Agreement" and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition First Lien Loan Documents"), by and among the Debtor, the lenders party thereto (collectively, the "Prepetition First Lien Lenders"), and the KFT Trust, Vinod Khosla, Trustee

(the "KFT Trust"), as administrative agent for the Prepetition First Lien Lenders (in such capacity, the "Prepetition First Lien Agent" and, together with the Prepetition First Lien Lenders and any other party to which Prepetition First Lien Obligations (as defined below) are owed, the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Secured Parties agreed to extend loans and other financial accommodations to the Debtor pursuant to the Prepetition First Lien Loan Agreement.  All obligations of the Debtor arising under the Prepetition First Lien Loan Agreement (including, without limitation, the "Secured Obligations" as defined therein) or the other Prepetition First Lien Loan Documents shall collectively be referred to herein as the "Prepetition First Lien Obligations."

(ii)    2013 Second Lien Prepetition Secured Debt.  Pursuant to that certain Senior Secured Convertible Note Purchase Agreement, dated as of October 18, 2013 (as amended, restated, or otherwise modified from time to time prior to the Petition Date, the "2013 Second Lien Purchase Agreement" and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Transaction Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "2013 Second Lien Note Documents"), by and among the Debtor, the note purchasers party thereto (collectively, the "2013 Second Lien Lenders"), and Khosla Ventures III, LP ("KV III"), as administrative agent for the 2013 Second Lien Lenders (in such capacity, the "2013 Second Lien Agent" and, together with the 2013 Second Lien Lenders and any other party to which 2013 Second Lien Obligations (as defined below) are owed, the "2013 Second Lien Secured Parties"), the 2013 Second Lien Secured Parties agreed to purchase notes and extend other financial accommodations pursuant to the 2013 Second Lien Purchase Agreement. All obligations of the Debtor arising under the 2013 Second Lien Purchase Agreement

(including, without limitation, the "Secured Obligations" as defined therein) or the other 2013 Second Lien Note Documents shall collectively be referred to herein as the "2013 Second Lien Obligations."

      (iii)    2014 Second Lien Prepetition Secured Debt.  Pursuant to that certain Senior Secured Promissory Note and Warrant Purchase Agreement, dated as of March 31, 2014 (as amended, restated, or otherwise modified from time to time prior to the Petition Date, the "2014 Second Lien Purchase Agreement" and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Transaction Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "2014 Second Lien Note Documents"), by and among the Debtor, the note purchasers party thereto (collectively, the "2014 Second Lien Lenders" and, together with the 2013 Second Lien Lenders, the "Prepetition Second Lien Lenders"), and the KFT Trust, as administrative agent for the 2014 Second Lien Lenders (in such capacity, the "2014 Second Lien Agent" and, together with the 2014 Second Lien Lenders and any other party to which 2014 Second Lien Obligations (as defined below) are owed, the "2014 Second Lien Secured Parties") (collectively, the 2014 Second Lien Agent and the 2013 Second Lien Agent are referred to as the "Prepetition Second Lien Agents", and the 2014 Second Lien Parties and the 2013 Second Lien Parties are referred to as the "Prepetition Second Lien Parties"), the 2014 Second Lien Secured Parties agreed to purchase notes and extend other financial accommodations pursuant to the 2014 Second Lien Purchase Agreement.  All obligations of the Debtor arising under the 2014 Second Lien Purchase Agreement (including, without limitation, the "Secured Obligations" as defined therein) or the other 2014 Second Lien Note Documents

8

shall collectively be referred to herein as the "2014 Second Lien Obligations" (together with the 2013 Second Lien Obligations, the "Prepetition Second Lien Obligations").

(iv)    Third Lien Prepetition Debt.    Pursuant to that certain Loan and Security Agreement, dated as of January 26, 2012 (as amended, restated, or otherwise modified from time to time prior to the Petition Date, the "Prepetition Third Lien Loan Agreement" and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Third Lien Loan Documents") (collectively, the Prepetition First Lien Loan Documents, the 2013 Second Lien Note Documents, the 2014 Second Lien Note Documents, and the Prepetition Third Lien Loan Documents are referred to as the "Prepetition Loan Documents"), by and among the Debtor, the lenders party thereto (collectively, the "Prepetition Third Lien Lenders" and together with the Prepetition First Lien Lenders, the 2013 Second Lien Lenders, and the 2014 Second Lien Lenders, the "Prepetition Secured Lenders"), and 1538731 Alberta Ltd., as administrative agent for the Prepetition Third Lien Lenders (in such capacity, the "Prepetition Third Lien Agent" and, together with the Prepetition Third Lien Lenders and any other party to which Prepetition Third Lien Obligations (as defined below) are owed, the "Prepetition Third Lien Parties") (collectively, the Prepetition First Lien Secured Parties, the 2013 Second Lien Secured Parties, the 2014 Second Lien Secured Parties, and the Prepetition Third Lien Parties are referred to as the "Prepetition Secured Parties"), the Prepetition Third Lien Parties agreed to extend loans and other financial accommodations pursuant to the Prepetition Third Lien Loan Agreement.    All obligations of the Debtor arising under the Prepetition Third Lien Loan Agreement (including, without limitation, the "Secured Obligations" as defined therein) or the

other Prepetition Third Lien Loan Documents shall collectively be referred to herein as the "Prepetition Third Lien Obligations" (collectively, the Prepetition First Lien Obligations, the Prepetition Second Lien Obligations, and the Prepetition Third Lien Obligations are referred to as the "Prepetition Secured Obligations").

      (v)    Prepetition Liens and Prepetition Collateral. Pursuant to certain Prepetition Loan Documents (as such documents were amended, restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "Prepetition Collateral Documents"), by and among the Debtor and one or more of the Prepetition First Lien Agent, the Prepetition Second Lien Agents, and the Prepetition Third Lien Agent (collectively, the "Prepetition Secured Agents"), including, without limitation, that certain Second Amended and Restated Subordination Agreement, dated as of July 17, 2014 (the "Subordination Agreement"), the Debtor granted to the applicable Prepetition Secured Agent, for the benefit of itself and the applicable Prepetition Secured Lenders, to secure the applicable Prepetition Secured Obligations, a first priority security interest (with respect to the Prepetition First Lien Obligations), second priority security interest (with respect to the Prepetition Second Lien Obligations), or third priority security interest (with respect to the Prepetition Third Lien Obligations) in and continuing lien (the "Prepetition Liens") on substantially all of the Debtor's assets and properties (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising. All "Collateral" as defined in the Prepetition First Lien Loan Agreement granted or pledged pursuant to any Prepetition Collateral Document or any other Prepetition Loan Document shall collectively be referred to herein as the "Prepetition Collateral." As of the Petition Date, (I) the Prepetition Liens (a) are legal, valid, binding, enforceable, and perfected

liens, (b) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or any applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below), (C) the Adequate Protection Replacement Liens (as defined below), and (D) the Prepetition Non-Primed Liens; and (II) (x) the Prepetition Secured Obligations constitute legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the applicable Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (y) no setoffs, recoupments, offsets, objections, defenses, or counterclaims to any of the Prepetition Secured Obligations exist, and (z) no portion of the Prepetition Secured Obligations or any payments made to any or all of the Prepetition Secured Parties are subject to avoidance, disallowance, impairment, recharacterization, recovery, disgorgement, subordination, attack, setoff, offset, recoupment, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or any applicable non-bankruptcy law.

(vi)     Amounts Owed under Prepetition Loan Documents. As of the Petition Date, the Debtor owed the Prepetition Secured Parties, pursuant to the Prepetition Loan Documents, without defense, counterclaim, reduction, or offset of any kind, in respect of loans made by the Prepetition Secured Parties, (a) protective advances in the amount of not less than $16,273,491.41 in principal pursuant to the Prepetition First Lien Loan Documents, (b) notes in the principal amount of not less than $95,700,000 pursuant to the 2013 Second Lien Loan Documents, (c) notes in the principal amount of not less than $10,400,000 pursuant to the 2014

Second Lien Loan Documents, and (d) loans in the amount of not less than $115,000,000 in principal and accrued interest pursuant to the Prepetition Third Lien Loan Documents, in each case *plus* all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including, without limitation, any reasonable attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents), and other amounts now or hereafter due under the Prepetition Loan Documents.

(vii)   Release of Claims.  Subject to the reservation of rights set forth in Paragraph 6 of this Interim Order, the Debtor and its bankruptcy estate shall be deemed to have forever waived, discharged, and released each of the Prepetition Secured Parties and their respective affiliates and each of their respective members, managers, equity holders, agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "Prepetition Secured Party Releasees") of any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, other offset rights, or other asserted rights of disgorgement or recovery against any and all of the Prepetition Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Secured Obligations, the Prepetition Liens, or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and the Debtor, on the other hand, including, without limitation, (I) any avoidance, disallowance, recharacterization, subordination, or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable federal law, state law, or municipal law and (II) any right, basis, or action to challenge or object to the amount, validity, or enforceability of the Prepetition Secured Obligations or any transfers made on account of the

Prepetition Secured Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Liens securing the Prepetition Secured Obligations.

        **E.**     **Findings Regarding the DIP Facility**.

        (i)     <u>Request for Postpetition Financing</u>.  The Debtor has requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances, and other financial accommodations on the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

        (ii)     <u>Need for Postpetition Financing</u>.  The Debtor does not have sufficient available sources of working capital, including Cash Collateral, to operate its business in the ordinary course of its business without the financing requested under the DIP Motion.  Rather, the Debtor has an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of its business, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operation needs, to complete the Debtor's marketing and sale process, and to otherwise preserve the value of the Debtor's estate.  The Debtor's access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful sale and/or to otherwise preserve the enterprise value of the Debtor's estate.  Immediate and irreparable harm will be caused to the Debtor and its estate if immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Interim Order and the DIP Loan Documents.

        (iii)     <u>No Credit Available on More Favorable Terms</u>.  As set forth in the DIP Motion and in the Fisch Declaration in support thereof, the Debtor has determined, at the time hereof, that no acceptable financing on more favorable terms from sources other than the DIP Secured

Parties under the DIP Loan Documents and this Interim Order is available. The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit on terms acceptable to the Debtor allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Credit Agreement. Accordingly, the Debtor is unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including, without limitation, the DIP Liens and the DIP Superpriority Claims (each as defined below), (b) allowing the DIP Secured Parties to provide the loans and other financial accommodations under the DIP Facility on the terms set forth herein and in the DIP Loan Documents (all of the foregoing described in clauses (a) and (b) above, including, without limitation, the DIP Liens and the DIP Superpriority Claims, collectively, the "DIP Protections"), and (c) providing the Prepetition Secured Parties the adequate protection more fully described in Paragraph 4 of this Interim Order.

F.      **Interim Financing**.  During the Interim Period (as defined below), the DIP Agent, the other DIP Secured Parties, and, as applicable, the Prepetition Secured Parties, are willing to provide financing to the Debtor and/or consent to the use of Cash Collateral by the Debtor, as applicable, subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the DIP Loan Documents, and (iii) findings by the Court that such interim postpetition financing and use of Cash Collateral is essential to the Debtor's estate, that the terms of such interim financing and use of Cash Collateral were negotiated in good faith and at arms' length,

and that the DIP Liens, the DIP Superpriority Claims, and the other protections granted pursuant to this Interim Order and the DIP Loan Documents with respect to such interim financing and use of Cash Collateral will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code or this Interim Order.  Without limiting the foregoing, any advances made to the Debtor and Cash Collateral use by the Debtor under the DIP Loan Documents and this Interim Order shall be entitled to the protections provided by section 364(e) of the Bankruptcy Code.  The DIP Agent, the other DIP Secured Parties, and the respective Prepetition Secured Parties have each acted in good faith in, as applicable, negotiating, consenting to (or otherwise not opposing), and agreeing to provide the postpetition financing arrangements and/or use of Cash Collateral on an interim basis as contemplated by this Interim Order and the DIP Loan Documents, and the reliance by the DIP Agent, the other DIP Secured Parties, and the respective Prepetition Secured Parties on the assurances referred to above is in good faith.

G.      **Adequate Protection for Prepetition Secured Parties**.  Each of the Prepetition Secured Agents has negotiated in good faith regarding the Debtor's use of the Prepetition Collateral (including, without limitation, the Cash Collateral) to fund the administration of the Debtor's estate and continued operation of its business.  The Prepetition Secured Agents have agreed to permit the Debtor to use the Cash Collateral and other Prepetition Collateral during the Interim Period, subject to the terms and conditions set forth herein, including, without limitation, the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code.   In addition, the DIP Facility contemplated hereby provides for a priming of the Prepetition Liens pursuant to section 364(d) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to the adequate protection as set forth herein pursuant to sections 361, 362,

363, and 364 of the Bankruptcy Code. Furthermore, in light of the subordination of their Liens and superpriority administrative claims to the Carve-Out and the DIP Liens and the use of Cash Collateral and Prepetition Collateral as set forth herein, the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply. Based on the DIP Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtor's prudent exercise of business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the respective Prepetition Secured Parties.

> **H.** **Business Judgment and Good Faith Pursuant to Section 364(e).**

(i)    The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facility to the Debtor in accordance with the DIP Loan Documents and this Interim Order.

(ii)    The terms and conditions of the DIP Facility as set forth in the DIP Loan Documents and this Interim Order, and the fees, expenses, and other charges paid and to be paid thereunder or in connection therewith, are fair, reasonable, and the best available under the circumstances, and the Debtor's agreement to the terms and conditions of the DIP Loan Documents and to the payment of such fees reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties. Such terms and conditions are supported by reasonably equivalent value and fair consideration.

(iii)    The DIP Facility and the DIP Loan Documents were negotiated in good faith and at arms' length among the Debtor and the DIP Secured Parties with the assistance and counsel of

their respective advisors, and all of the DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their affiliates for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code or this Interim Order, and the DIP Liens, the DIP Superpriority Claims (as defined below), and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and this Interim Order in the event this Interim Order or any other order or any provision hereof or thereof is vacated, reversed, amended, or modified, on appeal or otherwise.

I.      **Relief Essential; Best Interests**.  For the reasons stated above, the Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtor's estate, its business and properties, and its ability to successfully sell its assets or otherwise preserve the enterprise value of the Debtor's estate will be immediately and irreparably harmed.  Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtor's estate and consistent with its fiduciary duties.  Accordingly, sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, based on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtor, each of the Prepetition Secured Agents (on behalf of the Prepetition Secured Parties), and the DIP Agent (on behalf of the DIP Secured Parties) to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that:

1.    **Motion Granted**.  The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents.  Any objections to the DIP Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    **DIP Loan Documents and DIP Protections**.

(a)    Approval of DIP Loan Documents.  The Debtor is expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the DIP Loan Documents and this Interim Order, to incur the DIP Obligations (as defined below) in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents as may be required or necessary for the performance by the Debtor under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for by, this Interim Order and the DIP Loan Documents.  The Debtor is hereby authorized to perform all acts and pay the principal, interest, commissions, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Interim Order, including, without limitation and whenever incurred, all closing fees, administrative fees, commitment fees, and reasonable attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Interim Order.  Upon their execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor enforceable in accordance with their terms.

(b)     DIP Obligations.  For purposes of this Interim Order, the term "DIP Obligations" shall mean all amounts and other obligations and liabilities owing by the Debtor under the DIP Credit Agreement and other DIP Loan Documents (including, without limitation, all "Obligations" as defined in the DIP Credit Agreement) and shall include, without limitation, the principal of, interest on, fees, costs, expenses, and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Interim Order), and any obligations in respect of indemnity claims, whether contingent or otherwise.

(c)     Authorization to Incur DIP Obligations.  To enable the Debtor to continue to operate its business during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, (ii) the Interim Period Outside Date, and (iii) the Cash Collateral Termination Date (as defined below), in each case unless extended by written agreement of the DIP Agent, the Prepetition First Lien Agent, and each of the Prepetition Second Lien Agents (the period from the entry of this Interim Order through and including such earliest date, the "Interim Period"), and subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including, without limitation, the Budget Covenants as defined and contained in Paragraph 2(e) of this Interim Order, the Debtor is hereby authorized to use Cash Collateral and borrow under the DIP Facility in an aggregate outstanding amount for all such borrowings and Cash Collateral usage not to exceed $2,500,000; following the entry of the Final Order, the Debtor's authority to incur further DIP Obligations, if any, and use further Cash Collateral will be governed by the terms of such Final Order and the DIP Loan Documents.  To the extent a Final Order is entered, the Debtor shall, subject to the terms of the DIP Loan

Documents and the Final Order, be entitled to borrow all amounts under the DIP Loan Documents to fund the Debtor's working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the DIP Loan Documents, the Final Order, and any other orders of this Court.

(d)     Budget.  Attached hereto as **Exhibit A** is a 16-week rolling cash flow forecast (such forecast, together with any forecast for a period beyond the end of such forecast that is subsequently approved by the DIP Agent, the Prepetition First Lien Agent, each of the Prepetition Second Lien Agents, and the Court, as well as a listing of accrual fees and expenses budgeted for the Debtor's Professionals (as defined below) the "Approved Budget"), which reflects on a line-item basis (i) the Debtor's weekly projected cash receipts, (ii) all weekly projected disbursements, such as ordinary course operating expenses, bankruptcy-related expenses under the Case, capital expenditures, asset sales, estimated fees and expenses of the DIP Agent and the DIP Lenders (including, without limitation, counsel and financial advisors therefor) and the Prepetition First Lien Agent (including, without limitation, counsel and financial advisors therefor), and any other fees and expenses relating to the DIP Facility), (iii) the sum of weekly unused availability under the DIP Facility plus unrestricted cash on hand, (iv) the weekly outstanding principal balance of the loans made under the DIP Facility, and (v) the monthly accrual estimates of the Debtor's Professionals.  Commencing on November 19, 2014, by 2:00 p.m. (Eastern time) on every Wednesday thereafter (*i.e.*, every week), the Debtor shall prepare and deliver simultaneously to the DIP Agent, each of the Prepetition Secured Agents, the Mississippi Development Authority and its counsel (collectively, the "MDA"), and any Committee (i) a variance report/reconciliation report certified by the Chief Executive Officer or Chief Financial Officer of the Debtor, in form acceptable to the DIP Agent, the Prepetition First

Lien Agent, and each of the Prepetition Second Lien Agents, setting forth Approved Budget and reconciling the sources, uses, and disbursements of cash, (x) for the week ending on the immediately preceding Sunday and (y) the Measurement Period (as defined in the DIP Credit Agreement) most recently ended; and (ii) a certificate from the Chief Executive Officer or Chief Financial Officer of the Debtor showing the calculation of the financial covenants specified in Paragraph 2(e) of this Interim Order and Section 7.24 of the DIP Credit Agreement.

(e)    Budget Covenants.    The Debtor is authorized to incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds only in accordance with the specific purposes, and at the specific time periods, set forth in the Approved Budget, subject to the following permitted variances, which shall be tested on and as of the Sunday of each week:

(i)     the variance between actual disbursements for any line item in any given week shall not be greater than ten percent (10%) of the disbursements projected for such line item in that week in the Approved Budget plus the amount set forth in clause (iii), below;

(ii)    the variance between actual aggregate disbursements for any line item during any Measurement Period (as defined in the DIP Credit Agreement) shall not be greater than ten percent (10%) of the aggregate disbursements projected for such line item (excluding fees and expenses of the Debtor's Professionals, which shall not be subject to any permitted upward variance) in the Approved Budget for such Measurement Period (as defined in the DIP Credit Agreement); and

(iii)   any unused amounts contained in a line item for a given week (without giving effect to the ten percent (10%) variance set forth in clause (i), above) may be expended for the same line item in the succeeding four weekly periods.

The Debtor and the DIP Agent may modify the foregoing limitations by written agreement, provided that written notice of such modification shall be provided to the MDA and any Committee.  The foregoing budget-related covenants are collectively referred to herein as the "Budget Covenants."   Notwithstanding anything to the contrary in this Interim Order, the reasonable professional fees, costs, and expenses of the DIP Agent's and DIP Lenders' advisors and each of the Prepetition First Lien Agent's and Prepetition First Lien Lenders' advisors, respectively, shall be due, payable, and paid in accordance with the terms of this Interim Order notwithstanding any budgeted amounts for such fees, costs, and expenses set forth in the Approved Budget, provided that disbursements on account of such amounts shall not be included when determining the Debtor's compliance with the Budget Covenants or be subject to any variance reporting.

(f)      Termination Events.  The occurrence of any of the following events, unless waived in writing by the DIP Agent, the Prepetition First Lien Agent, and each of the Prepetition Second Lien Agents, each in its respective sole and absolute discretion, with written notice of any such waiver provided to the MDA and any Committee, shall constitute a termination event under this Interim Order and the DIP Loan Documents (each, a "Termination Event"):

(i)      any (a) stay, amendment, reversal, vacatur, or modification of this Interim Order without the express prior written consent of the DIP Agent, in its sole and absolute discretion, or (b) stay, amendment, reversal, vacatur, or modification of any provision of this Interim Order directly and adversely affecting the rights of the Prepetition First Lien Parties, or the Prepetition Second Lien Parties without the express prior written consent of the Prepetition First Lien Agent and each of the Prepetition Second Lien Agents, each in its respective sole and absolute

22

discretion;

(ii)    the failure to obtain entry of a Final Order on or before the Interim Period Outside Date;

(iii)    dismissal of the Case or conversion of the Case to a chapter 7 case, or appointment of a chapter 11 trustee, examiner with enlarged powers, or other responsible person in the Case;

(iv)    the entry of an order of the Court granting relief from the automatic stay to the holder of any claim against the Debtor equal to or exceeding $250,000; *provided, however*, that no Termination Event will result if such claim relates to personal property, goods, or services that are provided to or for the primary benefit of non-debtor KiOR Columbus, LLC;

(v)    any other superpriority administrative expense claim or lien senior to or *pari passu* with the DIP Obligations, the DIP Liens, the Adequate Protection Superpriority Claims (as defined below), or the Adequate Protection Replacement Liens (as defined below) shall be granted, approved, imposed, or otherwise created;

(vi)    any order shall be entered dismissing the Case but not providing for the DIP Obligations to be Paid in Full as of such dismissal;

(vii)    any material contract is rejected or otherwise terminated (other than in accordance with its terms as a result of a specified or scheduled termination date) or any material property of the Debtor or its estate is sold, in each instance, without the express prior written consent of the DIP Agent, *provided, however*, that no Termination Event will result if such contract relates to personal property,

goods, or services that are provided to or for the primary benefit of non-debtor KiOR Columbus, LLC;

(viii)   the Debtor enters into any agreement to or files any motion seeking to obtain additional financing under section 364(c) or 364(d) of the Bankruptcy Code or to grant any lien other than liens permitted under the DIP Credit Agreement without the prior written consent of the DIP Agent;

(ix)   the Debtor files or any representative of the Debtor's estate seeks leave to file or files an action challenging the validity, perfection, priority, extent, or enforceability of the DIP Loan Documents or the liens and claims granted thereunder;

(x)   the Debtor commences any action against any of the Prepetition First Lien Agent, the Prepetition Second Lien Agents, the Prepetition First Lien Lenders, or the Prepetition Second Lien Lenders with respect to the Prepetition First Lien Obligations or the Prepetition Second Lien Obligations, including, without limitation, any action to avoid, modify, dispute, challenge, or subordinate any of the Prepetition First Lien Obligations or the Prepetition Second Lien Obligations or the liens securing such obligations, or entry of an order in any action by any other party granting such relief;

(xi)   any DIP Collateral is subject to surcharge or marshaling;

(xii)   the Debtor shall take any action, including, without limitation, the filing of any motion, application, or other request, directly or indirectly supporting or advancing the occurrence of any of the events described in the preceding clauses (i) through (xi);

(xiii)   the Debtor makes any disbursements not contemplated by the Approved Budget;

(xiv)   the occurrence of any other Event of Default (as defined in the DIP Credit Agreement), or the occurrence of any Default following the passage of any applicable notice or cure period set forth in the DIP Credit Agreement regardless of any acts or omissions of the DIP Secured Parties that would otherwise have resulted in such Default not becoming an Event of Default by virtue of such passage of any applicable notice or cure period;

(xv)   the failure by the Debtor to timely perform any of the terms, provisions, conditions, covenants, or other obligations under this Interim Order;

(xvi)   the failure of the Debtor to obtain the prior written consent of the DIP Agent to the Debtor's (a) entering into or seeking authority from the Court to enter into any stalking horse bid or similar agreement to purchase all or a material portion of the Debtor's assets, and/or (b) agreeing to provide any proposed stalking horse bidder with a break-up fee, expense reimbursement, or any other bid protections;

(xvii)   with respect to the transaction process milestones set forth in Annex I to the DIP Credit Agreement (collectively, the "Transaction Process Deadlines"), it shall be an Event of Termination if (A) the hearing on the Bid Procedures Motion (as defined below) is not held on or before December 8, 2014, or either of the Final Order or the Bid Procedures Order (as defined below) is not entered by the Court within three (3) business days of such hearing, or (B) the Debtor fails to timely comply with any of the remaining Transaction Process Deadlines as such

deadlines are approved by the Court in the Final Order and are agreed to by the DIP Agent or fails to incorporate such milestones into a bid procedures motion and proposed form of order that designates one or more of the DIP Agent, Prepetition Secured Agents, an entity formed by the DIP Agent or one of the Prepetition Secured Agents, and/or certain of the Prepetition Secured Lenders, as applicable, as the "stalking horse" bidder for a transaction involving substantially all of the Debtor's assets (the "Bid Procedures Motion" and the "Bid Procedures Order," respectively).

(g)     Interest, Fees, Costs, and Expenses.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtor shall pay, and the DIP Lenders shall concurrently fund, all fees, costs, expenses (including, without limitation, reasonable out-of-pocket legal and other professional fees and expenses of the DIP Agent and the DIP Lenders), and other charges payable under the terms of the DIP Loan Documents whether or not budgeted in the Approved Budget, whenever incurred, and without further notice (except as provided in Paragraph 18(a) of this Interim Order), motion, or application to, order of, or hearing before, this Court, and such fees, costs, expenses, and other charges shall be non-refundable and, except as provided in Paragraph 18(a) of this Interim Order, subject only to the Debtor's reasonable right to review same.

(h)     Use of DIP Facility Proceeds and Proceeds of DIP Collateral.  Unless otherwise ordered by the Court, the Debtor is authorized to use the proceeds of all DIP Collateral (as defined below) solely in accordance with this Interim Order and the applicable provisions of the

DIP Loan Documents. Without limiting the foregoing, the Debtor is not authorized under this Interim Order to make any payments (from the DIP Collateral, the proceeds of loans under the DIP Facility, or otherwise) on account of any prepetition debt or obligation prior to the effective date of a chapter 11 plan with respect to the Debtor, except (a) with respect to the Prepetition Secured Obligations as set forth in this Interim Order and a Final Order; (b) as provided in the orders granting the relief requested in the various motions filed by the Debtor on or about the Petition Date, which orders shall be subject to this Interim Order and to the amounts authorized in the Approved Budget, along with the DIP Agent's reasonable right to review and comment on the form of such orders; (c) as provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Agent prior to such motion, order, or request for such relief being filed; or (d) as otherwise expressly provided in the DIP Credit Agreement.

(i)     Conditions Precedent.  The DIP Secured Parties and Prepetition Secured Parties each have no obligation to extend credit under the DIP Facility or permit use of any DIP Collateral proceeds, including Cash Collateral, as applicable, during the Interim Period unless and until all conditions precedent to the extension of credit and/or use of DIP Collateral or proceeds thereof under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the requisite DIP Secured Parties and each of the Prepetition Secured Agents in accordance with the DIP Loan Documents and this Interim Order.

(j)     DIP Liens.  To secure the prompt payment and performance of any and all obligations of the Debtor to the DIP Agent and the DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the following security interests and liens, which shall immediately and without any further action by any Person, be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry

of this Interim Order and effective as of the Petition Date, are hereby granted by the Debtor to the DIP Agent, for its own benefit and the benefit of the DIP Secured Parties and without the necessity of execution by the Debtor or the filing or recordation of mortgages, security agreements, lockbox agreements, financing statements, or otherwise, on all tangible and intangible assets and property of the Debtor, now existing or hereinafter acquired, including, without limitation, all cash and cash equivalents (whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts receivable, other rights to payment, intercompany loans and other investments, investment property, contracts, contract rights, securities (whether or not marketable), properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, bank accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds (*provided, however*, that to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event the DIP Agent shall be granted a lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests), real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, permits, franchise rights, capital stock and other equity interests of subsidiaries, tax and other refunds, insurance or other proceeds, commercial tort claims, causes of action, any actions that could be brought by the Debtor or other representative of its estate under any section within chapter 5 of the Bankruptcy Code ("Avoidance Actions") and proceeds relating thereto, rights under section 506(c) of the Bankruptcy Code, all other Collateral (as defined in the DIP Loan Documents), and all other property or "property of the estate" (as defined in section 541 of the

Bankruptcy Code) of any kind or nature, real or personal, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, wherever located (all of the foregoing collateral collectively referred to as the "DIP Collateral,"[4] and all such Liens granted to the DIP Agent for the benefit of all the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"):

> (i)    pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority Lien on all unencumbered DIP Collateral;

> (ii)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable Lien on all DIP Collateral that is subject to the Prepetition Non-Primed Liens; and

> (iii)    pursuant to section 364(d)(1) of the Bankruptcy Code and on a consensual basis, a perfected, binding, continuing, enforceable, and non-avoidable first priority, senior priming lien on all DIP Collateral (including, without limitation, Cash Collateral) that is senior to the Adequate Protection Replacement Liens (as defined below) and senior and priming to the Prepetition Liens; *provided, however*, that the liens described in this clause (iii) in this Interim Order shall be subject to the Carve-Out and the Prepetition Non-Primed Liens.

Notwithstanding the foregoing or anything to the contrary contained in the DIP Loan Documents or this Interim Order, the attachment of the DIP Liens on Avoidance Actions (other than

---

[4]    For the avoidance of doubt, the DIP Collateral does not include any property owned by Matheson Tri-Gas, Inc. and located on the premises of KiOR Columbus, LLC in Columbus, Mississippi.

Avoidance Actions arising under section 549 of the Bankruptcy Code) and on rights under section 506(c) of the Bankruptcy Code shall be subject to the entry of the Final Order.

(k)     DIP Lien Priority.  Notwithstanding anything to the contrary contained in this Interim Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the benefit of the DIP Secured Parties shall in each and every case be first priority senior security interests and liens that (i) are subject only to the Prepetition Non-Primed Liens, and the Carve-Out, and (ii) except as provided in sub-clause (i) of this Paragraph 2(k), are senior to all prepetition and postpetition liens or other interests of every kind, nature, and description of any other person or entity, whether created consensually, by an order of a court, or otherwise (including, without limitation, the Prepetition Liens and the Adequate Protection Replacement Liens).  The DIP Liens and the DIP Superpriority Claims (as defined below) (A) shall not be subject to sections 506, 510, 542, 549, 550, or 551 of the Bankruptcy Code or otherwise or the "equities of the case" exception of section 552 of the Bankruptcy Code (in the case of section 506(c) of the Bankruptcy Code and the "equities of the case" exception of section 552 of the Bankruptcy Code, subject to the entry of the Final Order), (B) shall be senior in priority and right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtor, and (C) shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of the Case.

(l)    Enforceable Obligations.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtor, which DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and its creditors, in accordance with their terms.  No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 542, 544, 547, 548, 549, or 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, disallowance, impairment, reduction, setoff, offset, recoupment, recharacterization, disgorgement, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, surcharge, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

(m)    Superpriority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out, over any and all administrative expense claims, adequate protection, and other diminution claims (including, without limitation, the Adequate Protection Superpriority Claims (as defined below)), unsecured claims, and all other claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331,

31

503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "DIP Superpriority Claims"). The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof (subject to any liens thereon).

3.    **Authorization to Use Cash Collateral and Proceeds of the DIP Facility.** Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, including, without limitation, the Approved Budget, which shall at all times be subject to the satisfaction of the DIP Agent, (a) the Debtor is authorized to use proceeds of credit extended under the DIP Facility from and after the Closing Date, and (b) the Debtor is authorized to use Cash Collateral; *provided, however*, that the Debtor shall be prohibited from at any time using proceeds of DIP Collateral (including Cash Collateral) or advances under the DIP Facility, in each case, except in accordance with the terms and conditions of this Interim Order and the DIP Loan Documents. To fund the Debtor's working capital and other general corporate needs pending the Final Hearing, in accordance with the terms of this Interim Order, the DIP Loan Documents, and the Approved Budget, the Debtor may request advances and other financial accommodations under the DIP Facility. The DIP Agent may terminate the Debtor's right to use proceeds of extensions of credit under the DIP Facility, DIP Collateral, Prepetition Collateral, and Cash Collateral without further notice, motion, or application to, order of, or hearing before, the Court, except as provided in Paragraph 13 of this Interim Order, immediately upon notice to

such effect by the DIP Agent to the Debtor after the occurrence and during the continuance of any Termination Event. Upon the occurrence and during the continuance of a Termination Event (subject to Paragraph 13 of this Interim Order), the Prepetition First Lien Agent or any of the Prepetition Second Lien Agents (on behalf of the applicable Prepetition Secured Parties) may terminate the consensual Cash Collateral use arrangement contained herein without further notice, motion, or application to, order of, or hearing before, the Court; *provided, however*, that the rights of the DIP Agent, the DIP Lenders, the Prepetition Secured Agents, and the Prepetition Secured Lenders under this Interim Order or otherwise shall not be affected by the waiver of any Termination Event by any other party. The earliest date upon which the consensual Cash Collateral use arrangement described in this Interim Order is terminated pursuant to this Paragraph 3 shall be referred to herein as the "Cash Collateral Termination Date."

4. **Adequate Protection for Prepetition Secured Parties**. In consideration for the Debtor's use of Cash Collateral and other Prepetition Collateral and the priming of the Prepetition Liens, the Prepetition Secured Parties shall receive the following forms of adequate protection (collectively referred to as the "Prepetition Secured Parties' Adequate Protection"):

(a) Adequate Protection Replacement Liens. To the extent there is a decrease in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date resulting from the use, sale, or lease by the Debtor of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition Liens thereto and to the Carve-Out, the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code, or otherwise ("Decrease in Prepetition Collateral Value"), the Prepetition Secured Agents, for the benefit of the applicable Prepetition Secured

Parties, are hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement security interests and liens on all of the DIP Collateral (such adequate protection replacement security interests and liens, the "Adequate Protection Replacement Liens"), which Adequate Protection Replacement Liens shall be subject to the DIP Liens, the Prepetition Non-Primed Liens, and the Carve-Out, and shall be senior in priority to the Prepetition Liens; *provided, however*, that any Adequate Protection Replacement Liens granted to the Prepetition Third Lien Parties pursuant to this Interim Order shall be subordinate in all respects to any Adequate Protection Replacements Liens granted to any of the other Prepetition Secured Parties under this Interim Order and, to the extent applicable, in accordance with the Subordination Agreement; *provided further, however*, that the attachment of the Adequate Protection Replacement Liens on Avoidance Actions (other than Avoidance Actions arising under section 549 of the Bankruptcy Code) and proceeds relating thereto, as well as the waiver of any rights of the Debtor or its estate under section 506(c) of the Bankruptcy Code, shall be subject to the entry of the Final Order.  The Adequate Protection Replacement Liens and the Adequate Protection Superpriority Claims (as defined below) (A) shall not be subject to sections 510, 542, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall be senior in priority and right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtor, and (C) shall be continuing, binding, valid, perfected, unavoidable, and enforceable against any trustee or any other estate representative appointed or elected in the Case or any Successor Case, and/or upon the dismissal of the Case.  For the avoidance of doubt,

except solely to the extent expressly set forth in this Interim Order, the terms and conditions of the Subordination Agreement (including with respect to the relative rights of the Prepetition Secured Parties) shall not be mitigated or modified in any respect as a result of the entry of this Interim Order, entry into the DIP Loan Documents, the incurrence of the DIP Obligations, or otherwise.

(b)    Adequate Protection Superpriority Claims.  To the extent of any Decrease in Prepetition Collateral Value, the Prepetition Secured Parties are hereby further granted allowed superpriority administrative claims in the Case and any Successor Case (such adequate protection superpriority claims, the "Adequate Protection Superpriority Claims"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code, junior only to the DIP Superpriority Claims and the Carve-Out to the extent provided herein, and payable from and having recourse to all of the DIP Collateral; *provided, however*, that any Adequate Protection Superpriority Claims granted to the Prepetition Third Lien Parties shall be subordinate in all respects to the prior Payment in Full any Adequate Protection Superpriority Claims granted to any of the other Prepetition Secured Parties under this Interim Order and, to the extent applicable, in accordance with the Subordination Agreement; *provided further, however*, that the Prepetition Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Adequate Protection Superpriority Claims unless and until all DIP Obligations have been Paid in Full (as defined below).  For purposes of this Interim Order, the terms "Paid in

Full," "Pay in Full," and "Payment in Full" shall mean, with respect to any referenced DIP Obligations or Prepetition Secured Obligations, (i) the indefeasible payment in full in cash of such obligations and (ii) the termination of all credit commitments under the DIP Loan Documents or Prepetition Loan Documents, as applicable.

(c)    Further Adequate Protection. As further adequate protection, the Debtor (A) has committed, as set forth in this Interim Order and, to the extent set forth herein, to adhere to the Transaction Process Deadlines (as such deadlines are approved by the Court in the Final Order and are agreed to by the DIP Agent), as may be modified with consent of the DIP Agent, and (B) shall simultaneously provide copies of any reports sent to the DIP Agent as may be required under this Interim Order or the DIP Credit Agreement to each of the Prepetition Secured Agents (both before and after Payment in Full of the DIP Obligations), the MDA, and any Committee.

(d)    Certain Payments. As further adequate protection, and without limiting any rights of any of the Prepetition Secured Agents and the other Prepetition Secured Parties under section 506(b) of the Bankruptcy Code, all of which rights are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition First Lien Secured Parties to the entry of this Interim Order and the Debtor's consensual use of Cash Collateral as provided herein, the Debtor shall (i) promptly following receipt of a written summary invoice, pay or reimburse currently the Prepetition First Lien Agent and Prepetition First Lien Lenders for any and all of their accrued and past-due reasonable fees, costs, expenses, and charges (including, without limitation, the fees, costs, and expenses of counsel and financial advisors for the Prepetition First Lien Agent and Prepetition First Lien Lenders) to the extent, and at the times, payable under the Prepetition Loan Documents and whether accrued before or after the Petition Date, and (ii) pay currently all reasonable out-of-pocket fees, costs, and expenses of the

Prepetition First Lien Agent and Prepetition First Lien Lenders (including, without limitation, the fees, costs, and expenses of counsel and financial advisors for the Prepetition First Lien Agent and Prepetition First Lien Lenders), whether incurred before or after the Petition Date, in the case of each of sub-clauses (i) and (ii) above, all whether or not budgeted in the Approved Budget, whenever incurred, and without further notice (except as provided in Paragraph 18(a) of this Interim Order), motion, or application to, order of, or hearing before, this Court.   The foregoing payments must be indefeasibly paid in full in cash and satisfied on or before the effective date of any chapter 11 plan.

(e)   Consent to Priming and Adequate Protection.   Each of the Prepetition Secured Agents, on behalf of the other Prepetition Secured Parties, is authorized to consent to the Prepetition Secured Parties' Adequate Protection and the priming provided for herein under the Prepetition Loan Documents, and has consented to the Prepetition Secured Parties' Adequate Protection and the priming provided for herein; *provided, however*, that such consent of the Prepetition Secured Agents to the priming of the Prepetition Liens and the use of Cash Collateral provided for herein is expressly conditioned on the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor in possession financing other than the DIP Facility provided under the DIP Loan Documents; and *provided, further*, that such consent shall be of no force and effect in the event this Interim Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to each Prepetition Secured Agent directly and adversely affected by such reversal, modification, stay, or amendment) or the DIP Loan Documents and DIP Facility as set forth herein are not approved; and *provided, further*, that in the event of the occurrence of the Maturity Date (as defined in the

DIP Credit Agreement), nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing concerning the continued use of Prepetition Collateral (including Cash Collateral) by the Debtor.

(f)    Section 507(b) Reservation.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable to protect the interests of the respective Prepetition Secured Parties. Nothing in this Interim Order shall impair or modify the application of section 507(b) of the Bankruptcy Code, or preclude the granting of additional forms of adequate protection, in the event that the adequate protection provided herein to the Prepetition Secured Parties is insufficient to compensate for any Decrease in Prepetition Collateral Value during the Case or any Successor Case.

5.    **Automatic Postpetition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, priority, and non-avoidability of the DIP Liens and the Adequate Protection Replacement Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other act or action to validate or perfect the DIP Liens and the Adequate Protection Replacement Liens or to entitle the DIP Liens and the Adequate Protection Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and each of the Prepetition Secured Agents (in the latter case, solely with respect to the Adequate Protection Replacement Liens) may, each in its respective sole and absolute discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the

38

Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been filed or recorded at the time of and on the Petition Date. The Debtor shall execute and deliver to the DIP Agent or to the applicable Prepetition Secured Agent all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection, and priority of, the DIP Liens and the Adequate Protection Replacement Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent and the applicable Prepetition Secured Agent, each in its respective sole and absolute discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or obligations to any non-governmental entity in order for the Debtor to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Interim Order or in favor of the Prepetition Secured Parties in accordance with this Interim Order. To the extent that a Prepetition Secured Agent is the secured party under any security agreement,

mortgage, leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee under any of the Debtor's insurance policies, or is the secured party under any of the Prepetition Loan Documents, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee under the Debtor's insurance policies, and the secured party under each such Prepetition Secured Loan Document, shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement), and shall act in that capacity.  To the extent necessary, the applicable Prepetition Secured Agent shall serve as agent for the DIP Agent for purposes of perfecting its respective liens on all DIP Collateral that is of a type such that perfection of a lien therein under otherwise applicable nonbankruptcy law may be accomplished only by possession or control by a secured party.

6.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.    The Debtor's Stipulations shall be binding on the Debtor and its estate in all circumstances upon entry of this Interim Order.  The Debtor's Stipulations shall be binding on each other party in interest, including the Committee, unless *first*, (x) if a Committee is formed, the Committee within sixty (60) calendar days of its formation, or (y) if no Committee is formed, any other party in interest (that obtains standing) within seventy-five (75) calendar days following the date of entry of this Interim Order,[5] commences (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtor's

---

[5]    The time period established by the earlier of clauses (x) and (y), as the same may be extended in accordance with this Paragraph 6, shall be referred to as the "Challenge Period"; and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge (as defined below), such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date."

Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Prepetition Secured Parties in connection with or related to the validity or extent of the Prepetition Secured Obligations or the Prepetition Liens, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Secured Obligations or the Prepetition Liens (clauses (i) and (ii) collectively, the "Challenges" and, each individually, a "Challenge"), and *second*, such challenging party obtains a final, non-appealable order in favor of such party sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action. If a chapter 7 trustee or a chapter 11 trustee is appointed during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is sixty (60) calendar days after the date on which such trustee is appointed. Except as otherwise expressly provided in this Paragraph 6, upon the Challenge Period Termination Date and for all purposes in the Case and any Successor Case, (i) all payments made to or for the benefit of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Interim Order (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to avoidance, disallowance, impairment, recharacterization, recovery, disgorgement, subordination, attack, setoff, offset, recoupment, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred; (iii) the Prepetition Secured Obligations shall be deemed to be fully allowed secured claims within the meaning of section 506 of the Bankruptcy Code, and (iv) the Debtor's Stipulations, including, without limitation, the release provisions therein, shall be binding on all parties in interest. Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtor's Stipulations and the other provisions in clauses (i) through (iv) in

41

the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtor's Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge. Subject to entry of the Final Order, the Challenge Period may be extended only with the prior written consent of the Prepetition First Lien Agent and each of the Prepetition Second Lien Agents, each in its respective sole and absolute discretion. Notwithstanding any provision to the contrary herein, (i) nothing in this Interim Order shall be construed to grant standing on any Committee or any other party in interest to bring any Challenge on behalf of the Debtor's estate and (ii) each of the Prepetition Secured Parties' and the Debtor's rights to challenge the standing of any party in interest to commence any such action is reserved. The failure of any Committee or any other party in interest to obtain an order of this Court granting standing to bring any Challenge on behalf of the Debtor's estate shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 6.

7.    **Carve-Out**. Subject to the terms and conditions contained in this Paragraph 7, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out (as defined below).

(a)    Carve-Out. For purposes of this Interim Order, "Carve-Out" means, severally:

(i)    payment of fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), in such amounts as are determined by agreement with the Office of the United States Trustee or by final order of the Court, together with the statutory rate of interest;

(ii)    fees payable to the Clerk of this Court;

(iii)   the lesser of (1) the amount of the unpaid and outstanding reasonable fees, costs, and expenses actually incurred by attorneys, accountants, and other professionals (collectively, "Professionals") retained, with the approval of the Bankruptcy Court, by the Debtor (including ordinary course Professionals) and (2) the budgeted (on an accrued basis, not on a cash basis, regardless of whether or not such fees, costs and expenses are subject to hold back) and unpaid amount of the fees, costs, and expenses of each of the Debtor's Professionals (including ordinary course Professionals), as set forth in the applicable line item in the Approved Budget (the amount set forth in clauses (1) and (2), as applicable, along with the obligations referenced in subsection v. below the "Debtor Professional Fees"), in each case, for the period from and after the Petition Date and prior to the earlier of the Termination Declaration Date (as defined below) or the Cash Collateral Termination Declaration Date (as defined below) (such earlier date, the "Carve-Out Trigger Date"); provided, that such Debtor Professional Fees are ultimately allowed by a final order of the Court pursuant to section 330 of the Bankruptcy Code (whether such Debtor Professional Fees are allowed before or after the Carve-Out Trigger Date);

(iv)    the lesser of (1) the amount of the unpaid and outstanding reasonable fees, costs, and expenses actually incurred any Professionals retained, with the approval of the Bankruptcy Court, by any Committee and (2) the budgeted and unpaid amount of the fees, costs, and expenses of the Committee's Professionals, as set forth in the applicable line item in the Approved Budget (the amount set

forth in clauses (1) and (2), as applicable, the "Committee Professional Fees"), in each case, for the period from and after the Petition Date and prior to the Carve-Out Trigger Date; provided, that such Committee Professional Fees are ultimately allowed by a final order of the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code (whether such Committee Professional Fees are allowed before or after the Carve-Out Trigger Date);

(v)      the amount of any fee, besides the Monthly Fee (as defined therein) in the Agreement dated June 16, 2014, between KiOR, Inc. and Guggenheim Securities, LLC, defining the terms of Guggenheim's engagement as investment advisor, as such obligations become due and payable (the "Guggenheim Obligations"), but only to the extent that such fee results from a sale or transaction relating to the Debtor (for the avoidance of doubt, any fee resulting from a sale or transaction entered into by non-debtor KiOR Columbus, LLC that does not include the Purchased Assets (as defined in the Bid Procedures Order) shall not be included within the Carve-Out);

(vi)     the amount of the unpaid and outstanding reasonable Debtor Professional Fees that are incurred by the Debtor during any period on and after a Carve-Out Trigger Date (the "Carve-Out Expense Reduction Period") in an aggregate amount not to exceed $100,000; and

(vii)    the amount of the unpaid and outstanding reasonable Committee Professional Fees that are incurred during the Carve-Out Expense Reduction Period in an aggregate amount not to exceed $25,000 (items (v) and (vi), collectively, the "Professional Expense Carve-Out Cap").

44

(b)     No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. The DIP Agent, the other DIP Secured Parties, the Prepetition Secured Agents, and the other Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Debtor's Professionals or the Committee's Professionals incurred in connection with the Case or any Successor Case under any chapter of the Bankruptcy Code; *provided, however*, that, subject to the terms and conditions of the DIP Credit Agreement, the DIP Lenders shall provide adequate funds to satisfy the obligations outlined in the Carve-Out. Nothing in this Interim Order or otherwise shall be construed (i) to obligate any Prepetition Secured Agent or any other Prepetition Secured Parties in any way to pay compensation to, or to reimburse expenses of, any of the Debtor's Professionals or the Committee's Professionals, or to guarantee that the Debtor or its estate has sufficient funds to pay such compensation or reimbursement or (ii) to increase the Carve-Out if actual allowed fees and expenses of any of the Debtor's Professionals or the Committee's Professionals are higher in fact than the amounts set forth in the Approved Budget or the Professional Expense Carve-Out Cap. Notwithstanding any provision in this Paragraph 7 to the contrary, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral, DIP Collateral, or proceeds of the DIP Facility shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 14 of this Interim Order. Nothing in this Interim Order shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtor, any Committee, any other official or unofficial committee in the Case or any Successor Case, or of any other person or entity, or shall affect the right of any DIP Secured Party or Prepetition Secured Party to object to the allowance and payment of any such fees and expenses.

8.      **Waiver of Section 506(c) Claims**.  Subject to the entry of the Final Order, no costs or expenses of administration which have or may be incurred in the Case or any Successor Case at any time shall be charged against or recovered from or against any of the Prepetition Secured Agents, the Prepetition Secured Lenders, their respective claims or interests, and/or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the applicable Prepetition Secured Agent in its sole and absolute discretion, and no such consent shall be implied from any other action, inaction, or acquiescence by the applicable Prepetition Secured Agent or any Prepetition Secured Lender.

9.      **Other Protection of Secured Parties' Rights**.

(a)      Unless the DIP Agent shall have provided its prior written consent or all DIP Obligations have been Paid in Full, this Interim Order and the protections granted hereunder shall survive any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, and the other DIP Protections granted pursuant to this Interim Order to the DIP Secured Parties; or (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order. Unless each of the Prepetition Secured Agents shall have provided prior written consent (or is deemed to have consented under the Subordination Agreement or any other applicable intercreditor agreement) or all Prepetition Secured Obligations have been paid in full in cash, this Interim Order and the protections granted hereunder shall survive any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by

a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral and/or that is entitled to administrative priority status, in each case which is superior to or *pari passu* with the Prepetition Liens, the Adequate Protection Replacement Liens, the Adequate Protection Superpriority Claims, and the other Prepetition Secured Parties' Adequate Protection granted pursuant to this Interim Order; or (ii) the use of Cash Collateral for any purpose other than to pay the Prepetition Secured Obligations or as otherwise permitted in this Interim Order.

(b) The Debtor (and/or its legal and financial advisors in the case of clauses (ii) through (iv) below) will, whether or not Payment in Full of the DIP Obligations has occurred, (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate, consult with, and provide to the DIP Agent and the Prepetition Secured Agents all such information and documents as required or allowed under the DIP Loan Documents, the Prepetition Loan Documents, and the provisions of this Interim Order, (iii) permit representatives of the DIP Agent and each of the Prepetition Secured Agents such rights to visit and inspect any of the Debtor's properties, to examine and make abstracts or copies from any of its books and records, to conduct a collateral audit and analysis of its inventory and accounts, to perform any appraisals of the DIP Collateral, to tour the Debtor's business premises and other properties, and to discuss, and provide advice with respect to, its affairs, finances, properties, business operations, and accounts with its officers, employees, and independent public accountants as and to the extent required by the DIP Loan Documents or the Prepetition Loan Documents, upon reasonable notice during regular business hours, and (iv) permit the DIP Agent, each of the Prepetition Secured Agents, and their respective representatives to consult

with the Debtor's management and advisors on matters concerning the general status of the Debtor's business, financial condition, and operations.

**10.     Proceeds of Subsequent Financing.**     Without limiting the provisions and protections of Paragraph 9 of this Interim Order, if at any time prior to the Payment in Full of all the DIP Obligations (including, without limitation, subsequent to the confirmation of any chapter 11 plan with respect to the Debtor), the Debtor's estate, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent until Payment in Full of the DIP Obligations and then, subject to Challenge pursuant to Paragraph 6 of this Interim Order, to the applicable Prepetition Secured Agent(s) for application to the Prepetition Secured Obligations, after giving effect to the Subordination Agreement.

**11.     Cash Collection.**  The Debtor shall maintain its existing cash management system to the extent set forth in the DIP Loan Documents unless the DIP Agent, in its sole and absolute discretion, consents in writing to any proposed modification to such cash management system, or as otherwise ordered by the Court.  From and after the date of the entry of this Interim Order, all collections and proceeds of any DIP Collateral or Prepetition Collateral or services provided by the Debtor, and all Cash Collateral which shall at any time come into the possession, custody, or control of the Debtor, or to which the Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition Loan Documents (or in such other accounts as are designated by the DIP Agent from time to time).  The DIP Agent and, after

Payment in Full of the DIP Obligations, each of the Prepetition Secured Agents, shall be deemed, without any further action of any kind, to have "control" over all of the Debtor's bank accounts within the meaning of Sections 8-106, 9-104, 9-105, 9-106, 9-107, and 9-314 of the New York Commercial Code.

      **12.**    **Disposition of DIP Collateral**. Unless the DIP Obligations are Paid in Full upon the closing of a sale or similar transaction, whether under a chapter 11 plan or otherwise, the Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) without the prior written consent of the DIP Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or any order of this Court), except as permitted in the DIP Loan Documents and this Interim Order. Without limiting any power of this Court, the Debtor shall not, without the prior written consent of the DIP Agent, in its sole and absolute discretion, (a) enter into any agreement to return any goods to any creditor for application against any prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise. In the event that the Debtor sells or otherwise disposes of any of the DIP Collateral other than in the ordinary course of business, the Debtor is authorized and directed to have all cash and other proceeds of any such sale, less amounts, if any, authorized to be deducted therefrom under the Carve-Out or the Approved Budget, paid (i) until all DIP Obligations are Paid in Full, directly to the DIP Agent for application to the DIP Obligations, and (ii) after the DIP Obligations have been Paid in Full but subject to entry of the Final Order, directly to the Prepetition Secured Agents for application to the Prepetition Secured Obligations, after giving effect to the

49

Subordination Agreement; *provided, however*, that such payment or application shall be without prejudice to (x) any timely Challenge asserted before or after such payment or application of proceeds and (y) any rights under section 506(b) of the Bankruptcy Code with respect to whether the Prepetition Secured Obligations are oversecured or undersecured.   Unless the DIP Obligations have been Paid in Full, no other party may foreclose or otherwise seek to enforce any junior lien or claim in any DIP Collateral (other than the Carve-Out).

   13. **Rights and Remedies Upon Termination Event**.

   (a) Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Secured Parties to exercise the following remedies upon the occurrence and during the continuance of any Termination Event: (i) immediately cease making advances under the DIP Facility; (ii) immediately declare a termination, reduction, or restriction on the ability of the Debtor to use any Cash Collateral (except as permitted in Paragraph 13(b) of this Interim Order), including Cash Collateral derived solely from the proceeds of DIP Collateral (any such declaration to be made to the Debtor, the Prepetition Secured Agents, the lead counsel to any Committee, the MDA, and the United States Trustee shall be referred to herein as a "Termination Declaration" and the date which is the earliest to occur of any such Termination Declaration being herein referred to as the "Termination Declaration Date"); and (iii) absent the granting of relief in favor of the Debtor as set forth in Paragraph 13(b) of this Interim Order, (X) declare the principal amount then outstanding of, and the accrued interest on, the DIP Obligations and all other amounts payable by the Debtor under the DIP Loan Documents to be forthwith due and payable, whereupon such amounts shall be immediately due and payable without presentment, demand, protest, or other formalities of any kind, all of which are hereby expressly waived by

the Debtor; (Y) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; and/or (Z) take any act or action permitted to be taken by the DIP Loan Documents during the continuance of any Termination Event.

(b)     Five (5) calendar days following a Termination Declaration Date, the DIP Agent shall have relief from the automatic stay and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtor's premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise remedies against the DIP Collateral permitted by applicable nonbankruptcy law.  Solely during the 5-day period after a Termination Declaration Date, the Debtor, the DIP Agent, each of the Prepetition Secured Agents, the MDA, and any Committee shall be entitled to an emergency hearing before the Court.  Unless otherwise ordered by the Court, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such 5-day period, without further notice or order.  During such 5-day period, the Debtor may not request further advances on the DIP Facility and, unless otherwise ordered by the Court, may not use Cash Collateral or any amounts previously advanced under the DIP Credit Facility except to pay payroll and other expenses critical to keep the business of the Debtor operating in accordance with the Approved Budget.

(c)     Upon the occurrence and during the continuance of a Termination Event, the Prepetition First Lien Agent or one or both of the Prepetition Second Lien Agents may declare a termination, reduction, or restriction on the ability of the Debtor to use any Cash Collateral by providing written notice of such Termination Event to the Debtor, the DIP Agent, the counsel to any Committee, and the United States Trustee (a "Cash Collateral Termination Declaration," and

the date on which such notice is given shall be referred to as the "Cash Collateral Termination Declaration Date"). Unless otherwise ordered by the Court, on the Cash Collateral Termination Declaration Date, the Debtor's right to use Cash Collateral shall automatically cease.

(d)    Subject to entry of the Final Order, and notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) calendar days' written notice, to the Debtor and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, that a Termination Event has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtor for the purpose of exercising any remedy with respect to any DIP Collateral located thereon and (ii) shall be entitled to all of the Debtor's rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtor, which are owned by or subject to a Lien of any third party and which are used by the Debtor in its business, in either the case of subparagraph (i) or (ii) of this Paragraph 13(d) without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law. Nothing in this Interim Order shall require the Debtor, the DIP Agent, or the other DIP Secured Parties to assume any lease, license, or other contract under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this Paragraph 13(d).

(e)     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtor to grant the Adequate Protection Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties and the DIP Secured Parties under the DIP Loan Documents, the DIP Facility, and this Interim Order; (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments hereunder; (iii) permit the DIP Agent, acting on behalf of itself and the DIP Lenders, to perform any act authorized or permitted under or by virtue of this Interim Order or the DIP Loan Documents; (iv) permit the Prepetition Secured Agents, acting on behalf of themselves and the applicable Prepetition Secured Lenders, to perform any act authorized or permitted under or by virtue of this Interim Order; and (v) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order.

14.     **Restriction on Use of Proceeds**.  Notwithstanding anything in this Interim Order to the contrary, unless otherwise ordered by the Court, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including, without limitation, any prepetition retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by (a) the Debtor, any Committee, any trustee or other estate representative appointed in the Case or any Successor Case, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in connection therewith) investigate or prosecute any Challenge or any other litigation in connection with the value of the Prepetition Collateral or the DIP Collateral; and (b) any of the Debtor, any Committee, and any trustee or other estate representative appointed in the Case or any Successor Case, or any other person, party, or entity to (or to pay any professional fees and disbursements incurred in

connection therewith): (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Secured Parties; (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Secured Parties, the Prepetition Secured Parties, or their respective affiliates, successors, or assigns or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations, and/or the Prepetition Secured Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Replacement Liens (including, with respect to the Prepetition Secured Parties only, the value of the DIP Collateral); (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition Liens, the Adequate Protection Replacement Liens, or the other Prepetition Secured Parties' Adequate Protection; (D) except to contest in good faith the occurrence or continuance of any Termination Event as permitted in Paragraph 13 of this Interim Order, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties' (and, after the Payment in Full of the DIP Obligations, the Prepetition Secured Parties', after giving effect to the Subordination Agreement) assertion, enforcement, or realization on the Cash Collateral or the

DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Loan Documents, as applicable, or this Interim Order; and/or (E) any act or action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties hereunder or under the DIP Loan Documents or the Prepetition Loan Documents, as applicable, or any payments made thereunder or respect thereto; *provided, however*, that, subject to the entry of the Final Order, up to $30,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral, or proceeds of the DIP Facility may be used by the Committee (to the extent such committee is appointed) to investigate (but not to prosecute) the validity, perfection, priority, extent, or enforceability of the Prepetition Secured Obligations or the Prepetition Liens, so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) who has proposed or may propose to purchase interests in the Debtor without the prior written consent of the DIP Agent; or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the prior written consent of the DIP Agent, the Prepetition First Lien Agent, or the Prepetition Second Lien Agents, as applicable.

15.     **Proofs of Claim.**  Upon entry of the Final Order, the Prepetition Secured Agents and the other Prepetition Secured Parties will not be required to file proofs of claim in the Case or any Successor Case for any claim described in this Interim Order.  The Debtor's Stipulations shall be deemed to constitute timely filed proofs of claim for all the Prepetition Secured Parties in respect of all Prepetition Secured Obligations.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Case or any Successor Case to the contrary, each of the Prepetition Secured Agents, for the benefit of themselves and the applicable

Prepetition Secured Lenders, are hereby authorized and entitled, in their respective sole and absolute discretion, but not required, to file (and amend and/or supplement, as each of them sees fit) a proof of claim and/or aggregate proofs of claim in the Case or any Successor Case for any claim described herein.

16.    **Preservation of Rights Granted Under the Interim Order**.    Subject to any exercise of rights under Paragraph 13 of this Interim Order, the DIP Agent and the DIP Secured Parties shall not be bound by any amendment, modification, or extension of this Interim Order (including, without limitation, through any chapter 11 plan) to which the DIP Agent does not give its prior written consent, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties.    In the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash whether previously or hereunder, or lien, claim, or priority authorized or created hereby.    Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code.

17.    **Insurance Policies**.    Upon entry of this Interim Order, the DIP Agent, the DIP Lenders, each of the Prepetition Secured Agents, and the Prepetition Secured Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and

56

loss payees on each insurance policy maintained by the Debtor which in any way relates to the DIP Collateral. The Debtor is authorized to, and upon the written request of the DIP Agent or any of the Prepetition Secured Agents shall, take all acts necessary to have the DIP Agent, on behalf of the DIP Lenders or the applicable Prepetition Secured Agent, on behalf of the Prepetition Secured Lenders, added as an additional insured or loss payee, as applicable, on each such insurance policy maintained by the Debtor which in any way relates to the DIP Collateral.

      **18.**   **Other Rights and Obligations**.

      (a)   <u>Certain Payments</u>. Except as provided below, professionals for the DIP Secured Parties and the Prepetition First Lien Secured Parties (collectively, the "<u>Lender Professionals</u>") shall not be required to submit invoices to the Court, United States Trustee, any Committee, or any other party-in-interest absent further court order. Copies of invoices submitted to the Debtor by such Lender Professionals shall be provided to the United States Trustee, the MDA, counsel for any Committee, and such other parties as the Court may direct. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided, however*, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. If the Debtor, United States Trustee, the MDA, or counsel for any Committee objects to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within five (5) calendar days after receipt of such invoices, then the Debtor, United States Trustee, the MDA, or the Committee, as the case may be, shall file with the Court and serve on such Lender Professionals an objection no later

than ten (10) calendar days after receipt of such invoices (the "Fee Objection") limited to the issue of the reasonableness of such fees and expenses. The Debtor shall timely pay in accordance with the terms and conditions of this Interim Order the undisputed fees and expenses reflected on any invoice to which a Fee Objection has been timely filed or as to which no Fee Objection is timely made. The Debtor shall indemnify the DIP Agent and the DIP Lenders (and other applicable parties) to the extent set forth in the DIP Loan Documents, including, without limitation, as provided in Section 6.3 of the DIP Credit Agreement. All unpaid fees and expenses of any of the Lender Professionals that have not been disallowed by this Court on the basis of an objection filed by the United States Trustee or the Committee (or any subsequent trustee of the Debtor's estate) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Interim Order.

(b)    Binding Effect. Subject only to Paragraph 6 of this Interim Order, the provisions of this Interim Order, inclusive of all findings herein, and the DIP Loan Documents shall be binding on all parties in interest in the Case, including, without limitation, the Debtor, the DIP Secured Parties, the Prepetition Secured Parties, any Committee, and their respective estate, successors, and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor), whether in the Case, in any Successor Case, or upon dismissal of any such Case or Successor Case; *provided, however*, that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or

chapter 11 trustee or other responsible person appointed for the estate of the Debtor in any Case or Successor Case.

(c)     No Waiver.  Neither the failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents, or otherwise (or any delay in seeking or exercising same), nor the failure of the DIP Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same), shall constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.    Nothing contained in this Interim Order (including, without limitation, the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party or any DIP Secured Party. Except as prohibited by this Interim Order, the entry of this Interim Order is in addition to, without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any rights or abilities of the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request conversion of the Case to a case under chapter 7, dismissal of the Case, or the appointment of a trustee or examiner in the Case or any Successor Case or to oppose the use of Cash Collateral in any Successor Case; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan with respect to the Debtor or seek to terminate the Debtor's exclusive right to propose a plan under the Bankruptcy Code; or (iii) except as expressly provided in this Interim Order, exercise any of the other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively.  Except to the extent otherwise expressly provided in this Interim Order,

neither the commencement of the Case nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties under the Prepetition Loan Documents or with respect to any non-debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Loan Documents, applicable law, or equity.

(d)     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.  Subject to the entry of the Final Order, in determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Loan Documents, the DIP Secured Parties, and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal, state, or local statute or regulation); or (ii) owe any fiduciary duty to the Debtor, its creditors, its shareholders, or its estate.

(e)     No Marshaling.  Subject to the entry of the Final Order, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds thereof shall be received and used in accordance with this Interim Order.  The Prepetition Secured Agent and the Prepetition Secured Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, upon entry of the Final Order, the "equities of the case" exception under section

552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Agents or the Prepetition Secured Lenders with respect to any proceeds, products, offspring, or profits of any of the Prepetition Collateral.

      (f)    <u>Amendments</u>. Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, the Debtor is authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility, (iii) changes the Maturity Date (as defined in the DIP Credit Agreement), or (iv) adds or amends (in any respect unfavorable to the Debtor) any Event of Default; *provided, however*, that any material modification or amendment of the DIP Loan Documents shall be permitted only pursuant to an order of this Court, which order may be submitted under certification (i) by agreement among the Debtor, the DIP Agent, the United States Trustee, the MDA, and any Committee, or (ii) upon negative notice provided to the United States Trustee and any Committee and its counsel, each of which shall have five (5) Business Days from the date of such notice within which to object in writing to such material modification or amendment. No waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by or on behalf of the Debtor and the DIP Agent and, except as provided herein, approved by this Court. Notwithstanding the foregoing, no waiver, modification, or amendment of any of the provisions of this Interim Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition Secured Parties shall be effective unless also consented to in

writing by the applicable Prepetition Secured Agents on behalf of the affected Prepetition Secured Parties.

(g)     Inconsistency.   In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(h)     Enforceability.  Subject only to Paragraph 6 of this Interim Order, this Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(i)     Reservation of Rights.   Nothing in this Interim Order shall be deemed to constitute the consent of the DIP Secured Parties or the Prepetition Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any order of the Bankruptcy Court that provides for the sale of all or substantially all of the assets of the Debtor (or any other sale of assets of the Debtor outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations, satisfy all of the Prepetition Secured Obligations and the Prepetition Secured Parties' Adequate Protection, and all of the foregoing are in fact paid in full in cash on the closing date of such sale.

(j)     Headings.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

(k)     General Cooperation From Debtor; Access to Information.  Without limiting any of the Debtor's other obligations in this Interim Order or the DIP Loan Documents, the Debtor shall, and shall cause its senior officers, directors, counsel, and financial advisors to, reasonably cooperate with the DIP Agent and the Prepetition Secured Agents in furnishing documents and information as and when reasonably requested by such parties regarding the DIP Collateral or the Debtor's financial affairs, finances, financial condition, business, and operations.

**19.     Final Hearing and Associated Deadlines.**

(a)     The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for December 8, 2014, at 1:00 p.m. (prevailing Eastern time) at the United States Bankruptcy Court for the District of Delaware.  The proposed Final Order shall be substantially the same as this Interim Order except that those provisions in the Interim Order that are subject to the entry of the Final Order shall be included in the Final Order without such qualification.  If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.

(b)     On or before November 14, 2014, the Debtor shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice") and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order must file written objections with the Clerk of the Bankruptcy Court no

later than December 3, 2014 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline"), which objections must also be served so that the same are actually received by each of the following on or before the Objection Deadline: (a) KiOR, Inc., 13001 Bay Park Road, Pasadena, Texas 77507 (Attn: Chief Executive Officer; Attn: General Counsel); (b) co-counsel to the Debtor, (i) King & Spalding, LLP, Attn: Mark W. Wege, 1100 Louisiana, Suite 4000, Houston, Texas 77002, and (ii) Richards, Layton & Finger, P.A., Attn: John H. Knight, 920 North King Street, Wilmington, Delaware 19801; (c) counsel to Khosla Ventures III, LP, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111 (Attn: Debra Grassgreen, Esq.), and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Peter Keane, Esq.); (d) co-counsel to Pasadena Investments, LLC, the KFT Trust, Vinod Khosla, Trustee, and VNK Management, LLC, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067 (Attn: Thomas E. Patterson, Esq.), and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq.); (e) 1538731 Alberta Ltd., c/o Alberta Investment Management Corp., 1100-10830 Jasper Avenue, Edmonton, Alberta T5J 2B3 (Attn: Caroline Kowall, Senior Legal Counsel); (f) co-counsel for Third Lien Agent, (i) Stradling, Yocca, Carlson & Rauth P.C., 100 Wilshire Blvd., 4th Fl., Santa Monica, California 90401 (attn.: Fred Neufeld, Esq.), and (ii) Ashby & Geddes, 500 Delaware Avenue, P.O Box 1150, Wilmington, Delaware 19899 (Attn: Karen B. Skomorucha Owens, Esq.); (g) counsel to any Committee; and (h) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Wilmington, Delaware 19801.

64

20.     **Retention of Jurisdiction**.  This Court has and will retain jurisdiction and power to interpret and enforce this Interim Order according to its terms.  This Court shall have jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, this Interim Order, the DIP Facility, any of the DIP Loan Documents, the DIP Protections, or the Prepetition Secured Parties' Adequate Protection.

Dated: _____**11/14**_____, 2014
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE