# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| KiOR, Inc.,[1] | Case No. 14-12514 (CSS) |
| | **Re: Docket Nos. 10, 54** |
| Debtor. | |

## ORDER (A) AUTHORIZING AND APPROVING
## BID PROCEDURES TO BE EMPLOYED IN CONNECTION
## WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL OF THE
## ASSETS OF KiOR, INC.; (B) SCHEDULING AN AUCTION AND SALE
## HEARING; (C) APPROVING THE MANNER AND FORM OF NOTICE OF
## THE AUCTION AND HEARINGS; AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] filed by KiOR, Inc. ("KiOR") in the above-caption chapter 11 case (the "Chapter 11 Case") for entry of an order pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 6004-1, and 9006-1(c) of the Local Rules (the "Local Rules") of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (i) authorizing and approving bid procedures (the "Bid Procedures") to be employed in connection with the potential sale (the "Sale") of substantially all of KiOR's assets (the "Purchased Assets"); (ii) scheduling a hearing to consider whether KiOR is authorized to assume and perform under that certain *Plan Support Agreement* (the "PSA") by and among KiOR, KFT Trust, Vinod Khosla, Trustee ("KFT Trust"), Khosla Ventures III LP ("Khosla Ventures III"), VNK Management LLC ("VNK Management"), and Pasadena Investments, LLC

---

[1]     The Debtor and the last four digits of its taxpayer identification number are: KiOR, Inc. (2233). The above-captioned Debtor's mailing address is 13001 Bay Park Road, Pasadena, Texas 77507.

[2]     Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Motion.

(collectively with the KFT Trust, Khosla Ventures III, and each of their respective subsidiaries and any successors or assigns, or other entity(ies) designated to effect the transactions contemplated by the PSA, the "Stalking Horse Bidder" and, collectively with KiOR, the "Parties"); (iii) scheduling an auction (the "Auction") and scheduling a hearing (the "Sale Hearing") to consider approval of the Sale, or scheduling a hearing (the "PSA Hearing" and together with the Sale Hearing, the "Hearings") on the assumption of the PSA if the Stalking Horse Bidder is the sole Qualified Bidder (as defined below) or is the Successful Bidder (as defined below); (iv) approving the manner and form of notice of the Auction and the Hearings, substantially in the forms attached hereto as Exhibit 1 (the "Sale Notice") and Exhibit 2 (the "Publication Notice"); and (v) granting related relief; and it appearing that no previous motion for similar relief having been made; and it appearing that the Bankruptcy Court has jurisdiction over this matter; and it appearing that due notice of the Motion as set forth therein is sufficient under the circumstances, and that no other or further notice need be provided; and it further appearing that the relief requested in the Motion, to the extent granted by this Order, is in the best interests of KiOR and its estate and creditors, with all parties' rights reserved as to the requested relief that will be considered by the Court at the Hearings, including, but not limited, for the avoidance of doubt, to KiOR's request to assume the PSA; and upon all of the proceedings had before the Bankruptcy Court; and after due deliberation and sufficient cause appearing therefor,

   NOW, THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES THAT:[3]

   A.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

---

[3]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

DMSLIBRARY01:24508694.1
RLF1 11223702v.1

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances. No other or further notice is required with respect to the relief granted in this Order except as set forth herein with respect to the Auction and Hearings. The requested relief at the December 8, 2014 hearing has been narrowed to include only the relief provided in this Order.

D.      KiOR has articulated good and sufficient reasons for this Court granting the relief provided in this Order concerning (1) the Bid Procedures and (2) the form, timing, and manner of notice of the proposed Sale, the Bid Procedures, and the other matters described herein, including the Sale Notice and the Publication Notice.

E.      The Bid Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets.

F.      Under the circumstances, the Bid Procedures constitute a reasonable, sufficient, adequate, and proper means to provide any potential competing bidders with an opportunity to submit and pursue higher and better offers for all or substantially all of the Purchased Assets.

G.      The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the potential sale of the Purchased Assets, the related Bid Procedures, the Hearings, the structure of the Sale, and related implications for interested parties, including, without limitation, creditors, customers, suppliers, and current and former employees.

H.      Publication of the Publication Notice as set forth herein is reasonably calculated to provide all potential claimants and all unknown creditors and parties not otherwise

3

required to be served with a copy of the Sale Notice pursuant to this Order with proper notice of

the potential sale of the Purchased Assets, the related Bid Procedures, and the Hearings.

       I.      All parties reserve all their respective rights to contest or oppose any relief

that is not granted by this Order, including but not limited to such relief that will or may be

sought in connection with the Motion at Hearings including, but not limited to, for the avoidance

of doubt, KiOR's request to assume the PSA, as to which the Court makes no findings in this

Order.

      NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

       1.      All objections to the entry of this Order not otherwise withdrawn, waived

or settled, and all reservations of rights included therein, hereby are overruled and denied on the

merits.

       2.      The following Bid Procedures shall govern the bidding and the Auction

with respect to the Sale of substantially all of KiOR's assets:

        a.    Qualified Bids.  Each competing bidder other than the
Stalking Horse Bidder shall, on or before **4:00 p.m. (prevailing Eastern
time) on January 7, 2015** (the "Bid Deadline"), deliver to KiOR:

(i) a cash deposit (via certified or bank check or wire transfer) of 10% of
the cash purchase price of such bid (the "Deposit");

(ii) reasonable proof acceptable to KiOR, in consultation with the
Prepetition Secured Lenders, the Mississippi Development Authority
("MDA"), and any official committee (a "Committee") of the interested
party's ability to consummate a purchase of the Purchased Assets and
assumption of any liabilities with respect to which such bidder seeks
assignment from KiOR and provide adequate assurance of future
performance under all leases or contracts with respect to which such
bidder seeks assignment from KiOR, copies of such party's annual and
quarterly financial statements for the most recently ended fiscal periods,
certified to be true, correct, and complete in all material respects and
evidence of sufficient financing or any other financial information which a
bidder believes substantiates its ability to perform its obligations with

4

regard to its bid (collectively, "Financials"); and

(iii) an executed asset purchase agreement, which asset purchase agreement shall (1) specify the amount of cash or other consideration offered by the competing bidder for the Purchased Assets (provided that the cash component of such bid may not be less than $17,135,000, except in the case of the Stalking Horse Bidder); and in the event that the Stalking Horse Bidder or any of the Prepetition Secured Lenders or their respective agents is the Successful Bidder, the issue of whether such Successful Bidder may convert certain debt into equity under a plan is reserved for later determination by the Court; (2) not be subject to unperformed due diligence, financing conditions, corporate approval conditions, or regulatory approval conditions (other than under the Hart–Scott–Rodino Antitrust Improvements Act of 1976, if required), nor provide for any expense reimbursement or break-up amount; (3) constitute an irrevocable offer by such competing bidder to complete its proposed purchase upon the terms set forth therein, and must confirm that it is irrevocable until closing of the sale of the Purchased Assets to the Successful Bidder (as defined below), and provide for an outside date that is on or before January 30. 2015; (4) provide for the purchase of substantially all of the Purchased Assets; (5) be accompanied by a marked-up version that shows all differences between such asset purchase agreement and the form of asset purchase agreement to be filed by KiOR (which form of asset purchase agreement was filed with the Court as an exhibit to the Motion); (6) contain a list of KiOR's executory contracts and unexpired leases with respect to which the bidder seeks assignment from KiOR; (7) fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid (collectively, a "Qualified Bid"); and (8) indicate whether such competing bidder agrees to act as the Back-Up Bidder (as defined below) in the event that such competing bidder is not the Successful Bidder (as defined below), as well as identify any date past which it would not serve as the Back-Up Bidder.

If the competing bidder is an entity formed for the purpose of a Sale transaction, then such entity must provide (x) Financials of the equity holder(s) and debt financing source(s) of the competing bidder or such other form of financial disclosure as is acceptable to KiOR, in consultation with the Prepetition Secured Lenders that are not participating in the Stalking Horse bid, the MDA, and any Committee, that demonstrates such competing bidder's financial ability to consummate a competing sale transaction; and (y) a written commitment or commitments acceptable to (and enforceable by) KiOR (including with respect to the conditions set forth therein) of the equity and debt financing source(s) of such competing bidder sufficient to satisfy the competing bidder's obligations in connection with a sale transaction.  A competing bidder also must establish that it has the financial ability to consummate its proposed

5

transaction by no later than January 30, 2015.  In order to participate in the bidding process, receive due diligence materials (including access to an online data room maintained by Guggenheim), and/or otherwise be considered for any purpose hereunder, a competing bidder must first deliver an executed confidentiality agreement in form and substance satisfactory to KiOR and its counsel, which confidentiality agreement will be made available to, among others, those interested parties that contact Guggenheim (Attn: Alex C. Fisch), provided that if any competing bidder is or is affiliated with a competitor of KiOR, KiOR will not be required to disclose to such competing bidder any trade secrets or proprietary information.  If KiOR, in consultation with the Prepetition Secured Lenders that are not participating in the Stalking Horse Bid, the MDA, and any Committee, determines that a competing bidder does not constitute a Qualified Bidder (as defined below), then such competing bidder's ability to receive due diligence access or additional non-public information shall terminate, except as otherwise agreed by KiOR.  Upon receipt of any bid, KiOR shall distribute copies of such bid to the Stalking Horse Bidder.

b.    Qualified Bidders.  Any initial overbid for the Purchased Assets must include a cash component of at least $17,135,000, and with each subsequent overbid providing an incremental amount of at least $250,000 of value to KiOR, or such greater amount as designated by KiOR.  In the event that KiOR, in consultation with the Prepetition Secured Lenders that are not participating in the Stalking Horse bid, the MDA, and any Committee, shall reasonably determine that such bid is a higher and better bid than that set forth in the PSA, the Stalking Horse Bidder shall have the right to amend the PSA as necessary in its reasonable discretion in order to cause the Stalking Horse Bidder's bid format to be comparable to such higher and better bid (for the avoidance of doubt, the amendment of the PSA by the Stalking Horse Bidder will in no event result in the cancellation of the Auction if KiOR has received at least one (1) other Qualified Bid, and that the amendment will not be with respect to the proposed purchase price).  Only those persons or entities who have submitted a Qualified Bid in compliance with this Order shall be a "Qualified Bidder"; *provided, however*, that the Stalking Horse Bidder shall be deemed to be a Qualified Bidder for all purposes under the Bid Procedures.  Each Qualified Bidder shall be invited to attend the Auction at the office of KiOR's counsel, King & Spalding, LLP, 1100 Louisiana, Suite 4000, Houston, Texas 77002, which Auction must be attended in person by the Qualified Bidder or an authorized representative of the Qualified Bidder.

c.    Identity of Bidders.  In addition to the information required above, each competing bidder other than the Stalking Horse Bidder shall, on or before **January 7, 2015**, provide written identification of the bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated

6

transaction and written disclosure of any connections or agreements with KiOR, the Stalking Horse Bidder, the Prepetition Secured Lenders, and any other known potential bidder (as defined below), and/or any officer, director, or direct or indirect equity security holder of KiOR.

        d.      The Auction. The Auction shall commence at 10:00 a.m. (prevailing Eastern time) on **January 9, 2015**. The Purchased Assets shall be sold free and clear of all liens, claims, encumbrances, and interests to the fullest extent allowed under section 363(f) of the Bankruptcy Code. The following rules shall govern the Auction:

i.   At least 24 hours prior to the Auction, KiOR will (i) notify all Qualified Bidders in writing of the highest and best Qualified Bid, as determined by KiOR, in consultation with the Prepetition Secured Lenders that are not participating in the Stalking Horse bid, the MDA, and any Committee, in its discretion (the "Baseline Bid"); and (ii) provide all Qualified Bidders, the MDA, and any Committee with complete copies of all asset purchase agreements, amendments to the PSA, and all other bid materials submitted by each other Qualified Bidder. During the course of the Auction, KiOR shall inform each participant which Qualified Bid reflects, in KiOR's view, in consultation with the Prepetition Secured Lenders, the MDA, and any Committee, the highest and best offer. To the extent that such bid has been determined to be the highest and best offer entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable asset purchase agreement, PSA or related ancillary agreement or, if applicable, in the Qualified Bid, other than an increase in the cash purchase price, KiOR, in consultation with the Prepetition Secured Lenders that are not participating in the Stalking Horse bid, the MDA, and any Committee, may provide notice to each participant of the value ascribed to any such added, deleted, or modified provision or provisions, assuming such modification can be quantified.

ii.  If multiple Qualified Bids are received, each Qualified Bidder shall have the right to continue to improve its Qualified Bid at the Auction. Only a Qualified Bidder who has submitted a Qualified Bid may participate in the Auction; *provided however*, that any party in interest may attend, but not participate in, the Auction if they provide the Debtor with written notice of their intention to attend the Auction on or before the Bid Deadline. Such written notice must be sent to counsel for the Debtor, via electronic mail to Mark W. Wege at mwege@kslaw.com. In addition to a purchase transaction, any Qualified Bidder may propose effectuating its bid through a plan of reorganization at the Auction, provided it can demonstrate the ability to perform all obligations under a plan including exit financing consistent with that provided under the PSA as well as other obligations of a plan, including adequate assurance, and subject to compliance with all applicable provisions of the

7

Bankruptcy Code and the Bankruptcy Rules (including, without limitation, Bankruptcy Code sections 1125 and 1129).

iii.  At the conclusion of the Auction, after consultation with the Prepetition Secured Lenders that are not participating in the Stalking Horse bid, the MDA, and any Committee, and subject to Court approval following the Auction, the highest and best offer shall be selected and announced as the successful bidder by KiOR (the "Successful Bidder"), and the bid of the bidder that submits the next highest and best bid, shall be selected and announced by KiOR (the "Back-Up Bid" by the "Back-Up Bidder"); *provided, however*, that designation of such bidder as the Back-Up Bidder must be consistent with the asset purchase agreement submitted in connection with such bidder's bid. For the avoidance of doubt, if there are no Qualified Bidders who agree to act as the Back-Up Bidder, then there shall be no Back-Up Bidder. There will be no further bids or offers considered by KiOR following the conclusion of the Auction and the announcement of the Successful Bidder and, as applicable, the Back-Up Bidder.

iv.  If KiOR does not receive at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then (1) a PSA Hearing shall be scheduled for the purpose of the Court determining whether KiOR may assume the PSA, and whether KiOR and the Stalking Horse Bidder may be authorized to move forward with the transactions contemplated by the PSA, subject to confirmation of a Chapter 11 plan; and (2) KiOR will file on the docket of the Chapter 11 Case a "Notice of Cancellation of Auction and Intent to Proceed with Plan Support Agreement."

v.  The Auction may be adjourned from time to time by KiOR, in consultation with the Prepetition Secured Lenders that are not participating in the Stalking Horse bid, the MDA, and any Committee, provided that no such adjournment shall affect the rights of the DIP Lenders under the DIP Credit Agreement or DIP Order. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to the Stalking Horse Bidder, all Qualified Bidders that have submitted a Qualified Bid, the MDA, and any Committee.

e.  Successful Bidder. KiOR, in consultation with the Prepetition Secured Lenders (excluding any that are participating in the Stalking Horse's bid), the MDA, and any Committee, may base the selection of the Successful Bidder and Back-Up Bidder on the following factors, among others: purchase price, liabilities assumed in the bid (provided that in no event shall the cash component required for a Qualified Bid be reduced as a result of a bidder's proposed assumption of liabilities), retention of KiOR employees and the markup of the form of

8

asset purchase agreement filed by KiOR submitted with the bid. After consultation with the Prepetition Secured Lenders, the MDA, and any Committee, KiOR may (a) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of KiOR, its estate, and its creditors; and/or (b) refuse to consider any bid that fails to comply with the Bid Procedures. After the determination of the Successful Bidder, KiOR shall (i) if the Successful Bidder is a bidder other than the Stalking Horse Bidder, promptly execute the asset purchase agreement previously executed and submitted by such Successful Bidder, together with any changes thereto necessitated by the parties' actions at the Auction, or (ii) if the Successful Bidder is the Stalking Horse Bidder, request that the Court at the PSA Hearing authorize KiOR to assume the PSA. All rights of the Stalking Horse Bidder, any Prepetition Secured Lender, and the MDA (if any) to object to KiOR's selection of a Successful Bidder or Back-Up Bidder, or to object to the consummation of any sale or other transaction represented by either such bid, are preserved.

       f.     Back-Up Bidder. If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated (or, in the event that the Stalking Horse Bidder is the Successful Bidder and the Court authorizes the assumption of the PSA at the PSA Hearing, the Parties fail to consummate the transactions contemplated by the PSA or the PSA is terminated), (i) KiOR shall be authorized to deem the Back-Up Bid the Successful Bid, and KiOR shall be authorized to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court, subject to confirmation of a Chapter 11 plan if necessary (or, in the event that the Stalking Horse Bidder is the Back-Up Bidder, move forward with the transaction contemplated by the PSA, subject to confirmation of a Chapter 11 plan), *provided, however,* that if the Stalking Horse Bidder is the Successful Bidder, the Back-Up Bidder shall remain the Back-Up Bidder in accordance with the Back-Up Bidder's asset purchase agreement; and (ii) the Deposit provided by such defaulting bidder shall be forfeited to KiOR in accordance with the defaulting bidder's asset purchase agreement, be treated as cash collateral for all purposes under the DIP Order, be subject to any obligations of KiOR under the DIP Credit Agreement, and be subject to the provisions of the Back-Up Bidder's asset purchase agreement. KiOR specifically reserves the right to seek all appropriate damages or equitable remedies from a defaulting Successful Bidder or Back-Up Bidder. If the Back-Up Bidder varies materially from the form of asset purchase agreement as filed with the Court, KiOR reserves the right to seek Court approval of the sale.

       g.     Modification of Bidding and Auction Procedures. After consultation with the Prepetition Secured Lenders, the MDA, and any

9

Committee, KiOR may modify the Bid Procedures with respect to the Bid Deadline (which shall not be extended past the outside date in the DIP Order other than as permitted by the DIP Order), whether a bid that materially complies with the requirements of the Bid Procedures (as determined by KiOR in the reasonable exercise of its business judgment consistent with its fiduciary duties) is a Qualified Bid, and the time (which shall not be extended past the outside date in the DIP Order other than as permitted by the DIP Order), manner, and place of the Auction; *provided, however,* that the Bid Procedures may not be otherwise modified except with the express written consent of KiOR, the Stalking Horse Bidder, the Prepetition Secured Agents, the MDA, and any Committee; *provided, further, however,* that in no event may the Bid Procedures be modified (i) to reduce the required cash component of a Qualified Bid or (ii) in a fashion inconsistent with any requirement under the DIP Order. All rights of the Stalking Horse Bidder, any Prepetition Secured Lender, the MDA, and any Committee in respect of any modification of the Bid Procedures by KiOR are preserved. KiOR may, following consultation with the Prepetition Secured Lenders, the MDA, and any Committee, make such modification to the Auction Procedures as are necessary and not inconsistent with this Order and its obligations under the DIP Order.

        h.     <u>Contract Cure Procedures</u>. To the extent a Qualified Bidder seeks approval in the Sale Order (defined in the Motion) of assumption and assignment of executory contracts and/or unexpired leases, the following procedures (the "<u>Cure Procedures</u>") shall apply for notifying counterparties to executory contracts and unexpired leases of potential Cure Amounts (as defined below).[4]

i.    Within two days (2) days after the Bid Deadline the Debtor will file a notice of potential assumption, assignment and/or transfer of executory contracts and unexpired leases identified by each Qualified Bidder (the "<u>Designated Executory Contracts</u>"), substantially in the form hereto as <u>Exhibit 3</u> (the "<u>Notice of Assumption and Assignment</u>"), and serve such notice on all non-debtor parties to the Designated Executory Contracts (the "<u>Contract Notice Parties</u>").

ii.    The Notice of Assumption and Assignment shall identify the calculation of the cure amounts, if any, that the Debtor believes must be paid to cure all defaults outstanding under each Designated Executory Contract (the "<u>Cure Amounts</u>") as of such date. The Notice of Assumption and Assignment shall also contain information regarding how a non-debtor party to a Designated Executory Contract may obtain adequate assurance of future performance information from the applicable Qualified Bidder (the "<u>Adequate Assurance Information</u>"). The Notice of Assumption

---

[4] To the extent a Qualified Bidder, like the Stalking Horse Bidder, seeks assumption and assignment of executory contracts and unexpired leases pursuant to a bankruptcy plan, these procedures will not apply.

and Assignment shall provide that a non-debtor party to a Designated
Executory Contract may object to the Cure Amount, the Adequate
Assurance Information or the assumption and assignment of such
contract or lease at the hearing to approve the sale or Sale Hearing or at
a later hearing, as determined by the Debtor subject to the Court's
calendar.

3.      Each Qualified Bidder participating at the Auction will be required to

confirm that it has not engaged in any collusion with respect to the bidding or the Sale.  All

Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction and

final adjudicatory power of the Bankruptcy Court and waived any right to a jury trial in

connection with any disputes relating to the Auction, and the construction and enforcement of

each Qualified Bidder's contemplated transaction documents, as applicable.

4.      The Auction will be conducted openly.

5.      Bidding at the Auction will be transcribed or videotaped.

6.      At the closing of any Sale transaction to any Successful Bidder other than

the Stalking Horse Bidder, any transaction fee payable to Guggenheim Securities, LLC

("Guggenheim") as a result of such Sale transaction shall be paid from the proceeds of such Sale

transaction (prior to any other use or distribution of such proceeds) and held in escrow pending

the allowance of such transaction fee by the Bankruptcy Court; *provided, however*, that if any

Sale transaction closes on account of any credit bid by the Stalking Horse Bidder, then any

transaction fee payable to Guggenheim as a result of such Sale transaction shall be paid from any

financing or other funds available to KiOR, including the Carve-Out (as defined in the Final DIP

Order in this case); *provided, further, however*, if KiOR has insufficient available funds to pay

such transaction fee upon the allowance of such fee by the Bankruptcy Court, then any unpaid

portion of any transaction fee shall be paid by the Stalking Horse Bidder upon the allowance of

Guggenheim's fees and expenses by the Bankruptcy Court; *provided further, however*, that this

11

Paragraph 6 shall apply only to the extent that such transaction fee results from a sale or transaction relating to KiOR (for the avoidance of doubt, any fee resulting from a sale or transaction entered into by KiOR Columbus, LLC that does not include the Purchased Assets shall not be subject to this Paragraph 6).

   7. The Sale Hearing or the PSA Hearing, as applicable, shall be held on **January 15, 2015, at 2:00 p.m. (prevailing Eastern time)** before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801. If there are no Qualified Bidders other than the Stalking Horse Bidder, then (1) the PSA Hearing shall be scheduled for the purpose of the Court determining whether KiOR may assume the PSA, and whether KiOR and the Stalking Horse Bidder may be authorized to move forward with the transactions contemplated by the PSA, subject to confirmation of a Chapter 11 plan; and (2) KiOR will file on the docket of the Chapter 11 Case a "Notice of Cancellation of Auction and Intent to Proceed with Plan Support Agreement." If the Stalking Horse Bidder is the Successful Bidder and there are one or more other Qualified Bids, then (1) the PSA Hearing shall proceed for the purposes of (X) confirming the Stalking Horse Bidder as the Successful Bidder and approving the Back-Up Bidder, subject to the ability of any party in interest to object to such relief, and (Y) the Court determining whether KiOR may assume the PSA, and whether KiOR and the Stalking Horse Bidder may be authorized to move forward with the transactions contemplated by the PSA, subject to confirmation of a Chapter 11 plan; and (2) KiOR will file on the docket of the Chapter 11 Case a "Notice of Successful Bid and Intent to Proceed with Plan Support Agreement."

   8. The Hearings may be adjourned from time to time without further notice other than an announcement by KiOR in the Bankruptcy Court of such adjournment on the date

12

scheduled for the Hearings, provided that no such adjournment shall affect the rights of the DIP Lenders under the DIP Credit Agreement or DIP Order.

        9.      The form of Sale Notice substantially in the form annexed hereto as Exhibit 1 and the form of Publication Notice substantially in the form annexed hereto as Exhibit 2 are hereby approved.  KiOR shall (a) serve within two (2) business days (by first class mail, postage prepaid) after entry of this Order (the "Mailing Deadline"), the Sale Notice upon the Sale Motion Notice Parties (as defined in the Motion) and each of the Debtor's creditors, and (b) on the Mailing Deadline, or as soon as practicable thereafter, submit for publication the Publication Notice on the website of KiOR's claims and noticing agent, Epiq Bankruptcy Solutions, at www.epiqsystems.com.

        10.     Notice as set forth in the preceding paragraph shall constitute good and sufficient notice of the Motion as it relates to KiOR's request for the scheduling of the Auction and the Hearings, and no other or further notice of the Motion, the Auction, and/or the Hearings shall be necessary or required.

        11.     Responses or objections, if any, to the Sale shall be filed with this Bankruptcy Court and served, so as to be actually received no later than December 31, 2014, at 4:00 p.m. (prevailing Eastern time) on: (a) KiOR, Inc., 13001 Bay Park Road, Pasadena, Texas 77507 (Attn: Chief Executive Officer; Attn: General Counsel); (b) co-counsel to KiOR, (i) King & Spalding, LLP, 1100 Louisiana, Suite 4000, Houston, Texas 77002 (Attn: Mark W. Wege), and (ii) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: John H. Knight); (c) co-counsel to the Stalking Horse Bidder, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067 (Attn: Thomas E. Patterson, Esq.) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North

King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor, Esq.); (d) the Office of the

United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King

Street, Suite 2207, Wilmington, Delaware 19801; and (e) counsel for the MDA, Greenberg

Traurig, LLP, 3333 Piedmont Road, Suite 2500, Atlanta, Georgia 30305 (Attn: David B.

Kurzweil), and 1000 Louisiana Street, Suite 1700, Houston, Texas 77002 (Attn: Shari L. Heyen),

and McCraney, Montagnet, Quin & Noble, PLLC, 602 Steed Road, Suite 200, Ridgeland,

Mississippi 39157 (Attn: Doug Noble) (collectively, the "Notice Parties").

      12.    KiOR is authorized and empowered to take such steps, incur and pay such

costs and expenses, and do such things as may be reasonably necessary to fulfill the notice

requirements established by this Order.

      13.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are

waived and this Order shall be effective and enforceable immediately upon its entry.

      14.    The Court shall retain jurisdiction and power over any matter or dispute

arising from or relating to the implementation of this Order.

      15.    All rights of all parties, except for those specifically provided in this

Order, are reserved.

Dated: December __B__, 2014
        Wilmington, Delaware

                                     THE HONORABLE CHRISTOPHER S. SONTCHI
                                     UNITED STATES BANKRUPTCY JUDGE

DMSLIBRARY01:24508694.1
RLF1 11223702v.1