In re: : Chapter 11

5

KiOR, Inc. : Case No. 14-12514 (CSS)

Debtor : Re: Docket No. 284

:

10 : Original Objections Due: Feb 17 at 4:00 p.m.

:

:

:

**OBJECTION TO MOTION TO APPROVE THE FIRST MONTHLY APPLICATION OF GUGGENHEIM**
15 **SECURITIES, LLC FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR**
**REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION**
**FOR THE PERIOD FROM NOVERMBER 9, 2014 THROUGH DECEMBER 31, 2014 [DOCKET 284]**

ESTEC Technology Works and Robert C. Dalton (the "ESTEC/Dalton"), the parties that represent
20 the offer with the greatest value for all of assets of KiOR, Inc (the "Debtor") in this Chapter 11
Bankruptcy case, objects (the "Objection") to FIRST MONTHLY APPLICATION OF GUGGENHEIM
SECURITIES, LLC ( the "GS") FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR
REIMBURSEMENT OF EXPENSES AS INVESTMENT BANKER TO THE DEBTOR AND DEBTOR IN POSSESSION
FOR THE PERIOD FROM NOVEMBER 9, 2014 THROUGH DECEMBER 31, 2014 [Docket 284].

25

This OBJECTION also contains a reply, in-part, to Docket 329.

**1.0 BACKGROUND**

30 GUGGENHIEM SECURITIES CITES COURT PROCEEDURES AS BEING "SILLY"

Guggenheim Securities, LLC contacted Mr. Dalton and ESTEC Technology Works, LLC stating

that the procedures of the U.S. Bankruptcy Court in the Delaware District are **"silly"** when

addressing the rights of Mr. Dalton and ESTEC Technology Works, LLC. This "silly" comment

35 also extends itself to the procedures of the U.S. Justice Depart, the U.S. Constitutional Rights of

Mr. Dalton and other civil rights of Mr. Dalton and ESTEC Technology works. Exhibit A shows

evidence of the 'Silly" comment.  Exhibit A is an email from GS asking Mr. Dalton and ESTEC Technology Works. LLC for an address to send Court required documents to ESTEC/DALTON.

40    The email is just one incident [the "i1 email"] by GS that shows cause for the OBJECTION, but this email became a precursor to subsequent incidents that stated false accusations regarding ESTEC/DALTON.  These subsequent incidents with false accusations were made by GS, King & Spalding, LLP (the "KS") and Richards, Layton & Finger, P.A (the "RLF") as detailed in Docket 329.

45

The i1 email demonstrates the arrogance and disrespect for the Court, the Justice Department, and many right of Mr. Dalton, ESTEC Technology Works, LLC and the shareholders of ESTEC Technology Works.

50    The i1 email is where the initial incident of the existence of computer and/or internet error had occurred.  ESTEC/DALTON never received the stated electronic documents as stated in Exhibit A.

The lack of respect that the "silly" comment regarding requirements of the Court Order led
55    ESTEC/DALTON to believe that the entire Bid Process was suspect as well as the sincerity of GS, KS and RLF regarding a true effort to sell the assets of the Debtor.

Next, DALTON/ESTEC tried to cooperate with the bid process by asking GS send all acceptable changes to the executed agreement by parties that had some interest in the assets of the
60    Debtor.  DALTON/ESTEC sincere efforts were refused, and then further barriers by GS, KS and RLF was put in place to prevent DALTON/ESTEC from getting the information that he needed to sign any agreement with the Debtor through GS.

At the same time while asking for any changes to executed agreements, ESTEC/DALTON asked
65    for a time to visit the Debtors facility at a time when ESTEC/DALTON was available. Again, the

efforts of ESTEC/DALTON to determine their participation in the bidding process was thwarted by GS, KS and RLF. Why? ESTEC/DALTON was the only known parties with sincere interests in acquiring all or part of the assets of the Debtor. Yet, GS, KS and RLF seek a great amount of compensation for their work between November 9, 2014 and December 31, 2014

70

The Court should note that abnormalities in electronic communications prompted Mr. Dalton to purchase a U.S. P.O. Box in Annapolis for communication by correspondence. Additionally, Mr. Dalton changed his contact email with GS from rca.dalton@gmail.com to robert.dalton@estectechnologyworks.com in an attempt to solve the issues with electronic
75 communications. Subsequently, both changes have helped to relieve errors as well as changes in communication that were made by GS, KS and RLF helped to relieve errors in electronic communications, too.

Furthermore, the reliability of computer errors and internet communication errors was
80 explained to the Court, KS and RLF in Dockets 324 and 325.

The cause for the electronic communication errors remains unknown, but subsequent actions in response to ESTEC/DALTON's notification of electronic communications error by GS, KS and RLF did not allow ESTEC/DALTON to enter the bidding process. Instead, KS and RLF began
85 another campaign to discredit ESTEC/DALTON [Docket 329].

While the initial problem with the electronic communications seemed to be resolved, the openness and sincerity of ESTEC/DALTON with regard to this matter, opened a Pandora's Box of forthcoming false accusations against ESTEC/DALTON's good faith efforts [Docket 329].

90

These incidents and false accusations do harm to Mr. Dalton, ESTEC Technology Works, LLC and the Shareholders of ESTEC Technology Works by discrediting their reputation, their credibility and their business interests.

95

These incidents and false accusations do harm to Mr. Dalton by discrediting his reputation, his credibility and his business interests.

These incidents and false accusations do harm to ESTEC Technology Works, LLC by discrediting

100    its reputation, its credibility and its business interests.

These incidents and false accusations do harm to the shareholders of ESTEC Technology Works, LLC by discrediting the reputation of their investment, the credibility of their investment and the business interests of their investment.

105

One should note that the false accusations by KS and RLF in Docket 329 have no basis beyond the mere conjecture of KS and RLF to unproven facts and relies merely on an email exchange or exchanges by either KS, RLF or GS without producing proof such as the documents that were requested in Dockets 324 and 325 or the release of the "NDA" that was sent by GS to

110    DALTON/ESTEC.

Furthermore, the parties GS, KS and RLF never even inquired about information from either Mr. Dalton or ESTEC Technology Works, LLC regarding either Mr. Dalton's background or the background of ESTEC Technology Works, LLC, a private individual and private company,

115    respectively.   The arrogance of GS, KS and RLF relied solely on the brief questioning of Mr. Dalton during a Court hearing on December 8, 2014. Subsequently, Mr. Dalton explained his nervousness in subsequent communications with the Court.  While Mr. Dalton was not under Oath during the Court hearing on December 8, 2014, Mr. Dalton did provide the Court with answers that were truthful to the best of his knowledge and the best of his recall at that time.

120

The arguments by KS and RLF in Docket 329 are either unfounded, without basis, false, misleading, a contrived interpretation of the contents of exhibited emails [Docket 329] by KS

and RLF who examined the emails out of context or who do not tell the "entire" truth about why the emails were exchanged or a combination thereof.

125

The Docket 329 that was filed by KS and RLF only further the arguments by ESTEC/DALTON filed in Dockets 324 and 325 regarding integrity of KS and RLF, especially with the agreement sent to ESTEC/DALTON on November 4, 2014. The Court should note that Debtor filed for Chapter 11 Bankruptcy [Docket 1] and other motions on November 9, 2014 and on the date of December 8,

130 2014 the Court issued an Order [Docket 131] that included instruction for a confidentiality agreement. In support of ESTEC/DALTON, Docket 329 states that the document that ESTEC/DALTON received was on November 4, 2014; thus the document that Mr. Dalton received was a pre-bankruptcy document and at time before December 8, 2014, when there existed no orders issued by the Court on bid procedures. Hence, after reading the document

135 that Mr. Dalton received on November 4, 2014, the best interests of ESTEC/DALTON would not have been served by signing any document before a Court order was issued and received in the mail by DALTON/ESTEC.

The Court should note that the Debtor-in-Possession financing was not approved until after

140 December 8, 2014; the timing of the approved financing is important because "NDA" document that was received by ESTEC/DALTON on November 4, 2014 seems to anticipate an agreement for "Debtor-in-Possession" financing by the Debtor by reserving an unfair advantage to the financier for bidding. Hmmm. **It seems like outcome of the bid process was preordained by the service providers of the Debtor.**

145

The actions of GS, KS and RLF regarding the "NDA" document that was received by ESTEC/DALTON appear to be part of an anticipation script to manipulate the actions of the Court and due process of the Court, the Justice System, the US. Constitution and other civil rights for others with respect the eventual Court Order on Dec. 8, 2014 and beyond. **It seems**

150 **like the entrance of DALTON/ESTEC into the Debtor's bankruptcy proceedings interfered with a script that was written for the Chapter 11 bankruptcy of the Debtor.**

Furthermore, the comments on **January 24, 2014** by James Decker of GS at a seminar
moderated by Jessie Austin, III, a partner at KS should be considered with regards to this
155     Objection and the objection of Docket 324 and 325.  The YouTube video,
https://www.youtube.com/watch?v=bPk4cvdo6aA , entitled "363 Sales – the New M&A and
Demise of the Chapter 11 Plan" shows Mr. Decker's comments.  While an opinion of Chapter 11
is fine, but when an opinion attempts to drive-over the rights of others in Court proceedings,
then an opinion becomes action that does harm to individuals, corporations and shareholder.
160

**On November 4, 2014 and subsequently, ESTEC/DALTON neither received a confidentiality**
**agreement nor NDA (non-disclosure agreement).  The 'NDA' that was mentioned the Exhibits**
**of Docket 329 was a different document.**

165

**2.0 ARGUMENT AND OBJECTIONS**
 GS got paid too much for the too little work that they did for the shareholders and creditors of
the Debtor.   The majority of the fees request should be left with the Debtor to be reorganized.

170     Much of the compensation that is requested by GS [Docket 284] amounted to nothing. One
wonders why? Especially one can wonder why, when only one potential sincere bidder,
ESTEC/DALTON, shows up in Court hearings on December 8, 2014.

In the filing by the Debtor on and about November 9, 2014, GS stated that it contacted over 160
175     parties and had executed about 20 agreements with parties. On December 8, 2014, GS and the
Debtor stated the same outcome, and no one was willing to bid at this time.  The only person
willing to bid was ESTEC/Dalton.  GS, KS and RLF did not cooperate with only person willing to
bid; there was no other party to bid, yet GS is asking for 191.8 hours of compensation for "item
6: Business – Discussion with Debtor, potential Buyer, buyer due diligence, etc.".  What did GS
180     actually do of actual value for this money?

If GS was calling solicitations for buyers and bidders, then they should show all phone records, emails and other correspondence that show what was done. Called-callers in the insurance industry and other telemarketers typically have a quota requiring that the callers have to make about 20 calls per hour and this amount of calls per hour could exceed 30 call per hour for other industries. Based upon a criteria of 20 calls per hour, then over 3800 contacts with parties could have been made by GS, yet the results were the same prior to November 9, 2014.

GS asks for fees for 8 hours for "item 4: General Research – Industry, Buyers List" How many parties were on that list and what was the results based upon the calls?

In total, GS is asking for compensation of $160,000.00, and the results of the period of time between November 9, 2014 through December 31, 2014 with regard to the benefit of the shareholder and the creditors of the Debtor remained the same as if GS did no work at all. Furthermore, the only serious party-in-interest was ESTEC/DALTON, but the service providers of the Debtor, GS, KS and RLF, would not facilitate the simple requests by ESTEC/DALTON in order for ESTEC/DALTON to bid for all or part of the assets of the Debtor during bidding process. As consequence and respect to the Court Order, ESTEC/DALTON had to provide an offer for all or part of the Debtor assets outside the bidding process that was cancelled anyway. **The offer called "BEST HORSE: Bonhomme Richards Seeks Serapis" remains the offer with the greatest value for all or part of the assets of the Debtor.**

The total sum of requested compensation by GS, KS and RLF for their work between November 9, 2014 to December 31,2014 is over $825,000.00; This amount is enough to construct and test a new prototype as a step prior to successful commercialization of all or part of the assets of the Debtor according to ESTEC/DALTON.

210

### 3.0 HEARING REQUESTED

ESTEC/DALTON requests that the Court Consider this Objection be heard on the same day, preferable March 17, 2015 as the request for an omnibus hearing made by K&S and RLF [Docket 329]. KS and RLF requested that the Court consider the objection [Docket 329] at the March

215    17, 2015 omnibus hearing or such earlier date as the Court deems appropriate so that the Debtor can make payments as intended in accordance with the fee procedures set forth in the Interim Fee Order.

### 4.0 RESERVATION OF RIGHTS

220

ESTEC/DALTON reserves their rights to supplement, amend or correct this Objection or file additional Objections as necessary or appropriate.

ESTEC/DALTON will present a witness list for the Court hearing. The witness list will include all

225    attorneys and employees of GS, KS and RLF that are listed in Dockets 253 and 254.

### 5.0 CONCLUSION

For the reason stated herein:

230    ESTEC/DALTON request that the Court deny, all or in part, request to approve the APPLICATION FOR COMPENSATION FIRST MONTH BY GUGGENHIEM PARTNERS [DOCKET 284] by

    A) Not allowing the release of any compensation prior to 1) the release copies of all executed confidentiality agreements by said parties who were identified in Dockets 8, 10 and 131 by an amount of parties who executed confidentiality agreements, 2)

235    the release of the executed confidentiality agreement with Pasadena Partners, and 3) prior to the release of phone records, emails and other forms of correspondence that is related to item6: Business – Discussion with Debtor, potential buyers, buyer due diligence, etc. Personal, corporate or like information is to be redacted, and

B) Approving a significant reduction of the original requested compensation amount in
240        Docket 284 where the significant reduction in compensation is

      a. most preferred as an amount being a 90% reduction of the total amount of requested compensation of the 191.8 hours for item 6: Business – Discussion with Debtor, potential buyers, buyer due diligence, etc. as found in Docket 284; or

245      b. lesser preferred as an amount being a 80% reduction of the total amount of requested compensation of the 191.8 hours for item 6: Business – Discussion with Debtor, potential buyers, buyer due diligence, etc. as found in Docket 284; or

      c. next lesser preferred as an amount being a 75% reduction of the total
250        amount of requested compensation of the 191.8 hours for item 6: Business – Discussion with Debtor, potential buyers, buyer due diligence, etc. s found in Docket 284; or

      d. a lesser amount as an amount ordered by the Court.

255

260

265

270    This Objection will be sent by either hand delivery, email or fax on this 17th day of February,

2015 parties that are listed on Docket [284]. Respectfully submitted on this 17th day of

February, 2015.

**ESTEC/DALTON**

275

Robert C. Dalton
Managing Partner, Chief Technology Officer

280    Mailing address:
ESTEC Technology Works, LLC
P.O. Box 6243
Annapolis, MD 21401

285    and;

Physical Address:
Robert C. Dalton
ESTEC Technology Works, LLC
290    120 Admiral Cochrane Dr.
Annapolis, MD 21401
Telephone: 72-576-3047
Email: rca.dalton@gmail.com

295

300