**EXHIBIT E**

**(Liquidation Analysis)**

This liquidation analysis (the "Liquidation Analysis") was prepared by Alvarez & Marsal North America, LLC ("A&M") in connection with A&M's representation of the Debtor in this chapter 11 case and for use in this Disclosure Statement. The Liquidation Analysis indicates the values which may be obtained by classes of Claims and Interests upon disposition of the Debtor's assets, pursuant to a forced liquidation by a chapter 7 trustee, as an alternative to the Plan. Accordingly, asset values discussed herein may be different than amounts referred to in the Plan. The Liquidation Analysis is based upon the assumptions discussed herein. All capitalized terms not defined in this Exhibit have the meanings ascribed to them in the Disclosure Statement to which this Exhibit is attached.

On November 9, 2014, the Debtor commenced this chapter 11 case in the District of Delaware (the "Petition Date"). This Liquidation Analysis has been prepared assuming that the Debtor's chapter 11 case is converted to a chapter 7 liquidation case on March 1, 2015 (the "Liquidation Date").

The Liquidation Analysis assumes that no value is available for distribution back to the Debtor from its non-Debtor subsidiary, KiOR Columbus, LLC ("KCL"), via either intercompany accounts or equity interest. The liquidation of the Debtor's assets is based on book values as of October 31, 2014, unless noted otherwise. These book values are assumed to be representative of the Debtor's assets as of or on the Liquidation Date. This Liquidation Analysis is only for the Debtor's assets and liabilities and does not include any numbers for or analysis of the assets and liabilities of KCL.

The Liquidation Analysis represents an estimate of recovery values and percentages based upon a chapter 7 liquidation of the Debtor, if a chapter 7 trustee were appointed by the Bankruptcy Court to convert assets into cash. The determination of the estimated proceeds from the forced liquidation of assets is an uncertain process involving the extensive use of estimates and assumptions which, although considered reasonable by A&M and management, are inherently subject to significant business, economic and competitive uncertainties and contingencies beyond the control of the Debtor and its management.

ACCORDINGLY, NEITHER THE DEBTOR NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTOR WOULD OR WOULD NOT APPROXIMATE THE ASSUMPTIONS REPRESENTED HEREIN. ACTUAL RESULTS COULD VARY MATERIALLY. MOREOVER, THE RECOVERIES SHOWN DO NOT CONTEMPLATE A SALE OF THE DEBTOR'S ASSETS ON A GOING CONCERN BASIS. WHILE THE DEBTOR MAKES NO ASSURANCES, IT IS POSSIBLE THAT THE PROCEEDS RECEIVED FROM SUCH A GOING CONCERN SALE(S) WOULD BE MORE THAN THE LIQUIDATION PROCEEDS, THE COSTS ASSOCIATED WITH THE SALE(S) COULD BE LESS, FEWER CLAIMS COULD BE ASSERTED AGAINST THE BANKRUPTCY ESTATE AND/OR CERTAIN ORDINARY COURSE CLAIMS COULD BE ASSUMED BY THE BUYER(S) OF SUCH ASSETS.

THE UNDERLYING FINANCIAL INFORMATION IN THE LIQUIDATION ANALYSIS WAS NOT COMPILED, EXAMINED OR AUDITED BY ANY INDEPENDENT ACCOUNT.

Summary Notes to the Liquidation Analysis

1. In preparing the Liquidation Analysis, A&M and the Debtor have estimated an amount of Allowed Claims for each class of claimants based upon a review of the Debtor's Schedules and Statements as of the Petition Date in the Chapter 11 proceeding, the Debtor's October 31, 2014 balance sheet, as well as various first day pleadings. It should be noted that the cessation of a business in liquidation will trigger certain additional claims that otherwise would not exist under the Plan absent a liquidation. Examples of these kinds of claims include various potential employee claims (*e.g.*, severance claims, WARN Act claims), executory contract claims and lease rejection damage claims. Some of these types of additional claims could be significant and would be entitled to priority in payment over general unsecured claims. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims. However, no attempt has been made to estimate other additional priority or unsecured claims that may result from such events under chapter 7 liquidation because no funds are estimated to be available to priority or general unsecured creditors based on this analysis.

The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for any other purpose, including any determination of the value of any distribution to be made on account of

Allowed Claims under the Plan. The actual amount of Allowed Claims could be materially different from the amount of claims estimated in the Liquidation Analysis as the claims process is on-going.

2. The Liquidation Analysis assumes the liquidation of substantially all of the Debtor's assets at or about the Liquidation Date and that the Debtor's research and development efforts are immediately terminated and the entire Pasadena facility is immediately brought to a "moth balled" state.

3. The Liquidation Analysis assumes that the chapter 7 trustee would have no available funding for the liquidation other than with cash generated by the sale of the Debtor's assets which assets are subject to multiple liens and security interests of 3 tranches of secured debt totaling more than $250 million. Therefore, it is not clear how a chapter 7 trustee would or could have use of any funds absent consent of all the secured creditors. Accordingly, the estimated recoveries could be significantly lower than those projected.

4. The Liquidation Analysis does not include estimates for tax consequences, both federal and state, that may be triggered upon the liquidation and sale of assets in the manner described herein. Such tax consequences may be material and further diminish recoverable values on the assets.

5. The Liquidation Analysis does not include recoveries resulting from any potential preference, fraudulent transfer or other litigation or avoidance actions.

6. The Liquidation Analysis assumes that all asset proceeds and creditor recoveries are at nominal amounts and does not consider the discounting of values over time. The discounting of values would result in lower recoveries to constituents than presented in this Liquidation Analysis.

*******************

A summary of the Debtors' chapter 7 Liquidation Analysis is as follows:

**KiOR Inc.**
**Liquidation Analysis**
($USD)
**Summary**

|  | Notes | NBV* | Base Recovery $ | % |
|---|---|---|---|---|
| **Recoverable Assets** |  |  |  |  |
| Cash and cash equivalents | [a] | - | - | 0.0% |
| Prepaid expenses and other assets, net | [b] | 2,029,097 | - | 0.0% |
| Property, plant and equipment, net | [c] | 28,871,984 | 2,143,181 | 7.4% |
| Intangible assets, net | [d] | 1,950,369 | 1,000,000 | 51.3% |
| Intercompany receivable | [e] | 274,266,263 | - | 0.0% |
| Equity Interest in KiOR Columbus LLC | [f] | Unkown | - | 0.0% |
| **Recoverable Assets / Gross Proceeds** |  | **$ 307,117,712** | **$ 3,143,181** | **1.0%** |
| Preferences / Fraudulent Conveyances | [5] | TBD | TBD |  |
| **Total Gross Proceeds** |  | **$ 307,117,712** | **$ 3,143,181** |  |

* **Unless Noted Otherwise**

| **Total Gross Proceeds** | **$ 3,143,181** |
|---|---|

| **Administrative Claims** | Notes | Claim | | Expenses | |
|---|---|---:|---|---:|---|
| Accrued and Unpaid Payroll | [g] | 40,552 | | 40,552 | |
| Professional Fees | [h] | 1,919,125 | | 1,919,125 | |
| Trustee Fees | [i] | 94,295 | | 94,295 | |
| **Total Administrative Claims** | | $ 2,053,973 | | $ 2,053,973 | |
| | | | | | |
| **Total Net Proceeds Available to Creditors** | | | | $ 1,089,209 | |

| | | | Base Recovery | |
|---|---|---:|---:|---:|
| | Notes | Claim | $ | % |
| **DIP Financing** | | | | |
| DIP Financing | [j] | 10,024,222 | 1,089,209 | |
| **Total DIP Financing** | | $ 10,024,222 | $ 1,089,209 | 11% |
| | | | | |
| **Total Net Proceeds Available to Secured Claims** | | | $ - | |

| | | | Base Recovery | |
|---|---|---:|---:|---:|
| **Secured Claims** | | | | |
| | Notes | Claim | $ | % |
| **Priority Tax Claims** | | | | |
| Priority Tax Claims | **[k]** | 793,333 | - | |
| **Total Secured Propety Taxes** | | $ 793,333 | $ - | 0% |
| | | | | |
| **1st Lien** | | | | |
| Protective Adv. Loan and Security | [k] | 16,273,500 | - | |
| **Total 1st Lien** | | $ 16,273,500 | $ - | 0% |
| | | | | |
| **2nd Lien** | | | | |
| Senior Secured Conv. Note | [k] | 95,700,000 | - | |
| Senior Secured Promissory Note | [k] | 10,400,000 | - | |
| **Total 2nd Lien** | | $ 106,100,000 | - | 0% |
| | | | | |
| **3rd Lien** | | | | |
| Loan and Security Agreement | [k] | 115,000,000 | - | |
| **Total 3rd Lien** | | $ 115,000,000 | $ - | 0% |
| | | | | |
| **Total Secured Claims** | | $ 238,166,833 | $ - | 0% |
| | | | | |
| **Total Net Proceeds Available to Priority Claims** | | | $ - | |

| | | | Base Recovery | |
|---|---|---:|---:|---:|
| | Notes | Claim | $ | % |
| **Priority Claims** | | | | |
| Accrued PTO Priority | [l] | 218,852 | - | |
| 2014 Taxes Payable | [l] | 39,000 | - | |
| 2015 Acrrued Taxes | [l] | 72,000 | - | |
| **Total Administrative / Priority Claims** | | $ 329,852 | $ - | 0% |
| | | | | |
| **Total Net Proceeds Available to Unsecured Claims** | | | $ - | |

| | | | Base Recovery | |
|---|---|---:|---:|---:|
| | Notes | Claim | $ | % |
| **Unsecured Claims** | | | | |
| Unsecured Priority | **[m]** | 527,445 | - | |
| Trade Claims | **[m]** | 4,270,666 | - | |
| **Total Unsecured Claims** | | $ 4,798,111 | $ - | 0% |

**Detailed Footnotes**

*Asset Recovery Estimates*

(a) **Cash and Cash Equivalents:** The Liquidation Analysis assumes no available cash balance as of the Liquidation Date as it is assumed that the Debtor would have used any available cash balances to fund chapter 11 operating costs.

(b) **Prepaid Expenses and Other Assets:** This asset class consists primarily of pre-paid insurance of approximately $1.2 million, deferred debt issue costs of approximately $440, 000 and miscellaneous prepayments of approximately $260,000. Based on A&M's discussions with management and a review of the account details associated with these assets, a 0% recovery is assumed for purposes of the Liquidation Analysis.

(c) **Property, Plant and Equipment:** This asset class represents the Debtor's plant machinery and equipment, leasehold improvements, lab and testing equipment, office furniture and computer hardware and software. Recovery percentages were applied against the net book value of each asset class (unless otherwise noted) per the Debtor's October 31, 2014 balance sheet. The Liquidation Analysis yields the following recoverable amounts and includes the following assumptions discussed below:

| Property Plant & Equipment | Gross Book Value 10/31/14 | Net Book Value 10/31/14 | Estimated % Recovery | Estimated $ Recovery |
|---|---|---|---|---|
| Machinery/Equipment | 30,181,093 | 24,497,022 | 5% | 1,224,851 |
| Leasehold Improvements | 5,138,547 | 3,005,295 | 0% | - |
| Lab/Testing Equip | 4,546,247 | 760,754 | 20% | 909,249 |
| Furniture | 133,736 | 70,406 | 5% | 3,520 |
| Computer Hardware | 521,133 | 111,212 | 5% | 5,561 |
| Computer Software | 834,008 | 302,273 | 0% | - |
| AUC | 11,390,991 | 125,022 | 0% | - |
| PP&E | $ 52,745,755 | $ 28,871,984 | 7% | $ 2,143,181 |

- **Machinery and Equipment:** Based on discussions with management, Guggenheim Securities[1] and a review of account details, a 5% recovery based on net book value was deemed appropriate for this asset class. In the Liquidation Analysis, it is assumed that all of the demonstration plant machinery and equipment is sold in parts (i.e., scrapped) yielding a total recovery of approximately $1.2 million; all of which is subject to the liens and security interests of 4 groups of secured creditors which hold claims in excess of $250 million.

- **Leasehold Improvements:** Leasehold improvements were assumed to be undistinguishable from the real property it is attached to. Given that real property is owned by an unrelated third party, this asset class was assumed to yield a 0% recovery.

- **Lab and Testing Equipment:** Based on discussions with management and a review of account details, a 20% recovery based on gross book value (i.e., original equipment purchase price) was deemed appropriate for this asset class. In the Liquidation Analysis, it is assumed that all of the lab and testing equipment is sold as individual pieces of easily transferrable equipment yielding a total recovery of approximately $909,000; all of which is subject to the liens and security interests of 4 groups of secured creditors which hold claims in excess of $250 million.
.

---

[1] Guggenheim Securities, the Debtor's investment banker, had various conversations with liquidators concerning liquidation values for similar type machinery and equipment located at KCL.

- **Computer Hardware:** This asset class consists primarily of servers, desktop computers, lab top computers and other miscellaneous IT equipment. Based on discussions with management and a review of account details, a 5% recovery based on net book value was deemed appropriate for this asset class; all of which is subject to the liens and security interests of 4 groups of secured creditors which hold claims in excess of $250 million.

- **Furniture:** This asset class consists primarily of desks, office chairs and other miscellaneous office furniture. Based on discussions with management and a review of account details, a 5% recovery based on net book value was deemed appropriate for this asset class; all of which is subject to the liens and security interests of 4 groups of secured creditors which hold claims in excess of $250 million.

- **Computer Software:** This asset class represents capitalized costs relating to the Debtor's purchase of various software programs. These software licenses are generally non-transferable. As such, a 0% recovery was assumed in the Liquidation Analysis.

- **Assets Under Construction ("AUC"):** This asset class represents capitalized engineering costs for building the Pasadena demo unit, the pilot plant units and related equipment; any recoveries related to equipment, would be reflected in the Machinery and Equipment and Lab and Testing Equipment Categories, discussed above. As such, as 0% recovery was assumed in the Liquidation Analysis.

(d) **Intangible Assets, net:** The primary assets in this category include intellectual property consisting mainly of patents and patents pending, which are carried at a net book value of $1.4 million, and a DCR license (i.e., pilot plant technology license) carried at a net book value of $550,000; all of which is subject to the liens and security interests of 4 groups of secured creditors which hold claims in excess of $250 million.

The Debtor's patents are assumed be sold through a quick sale to a strategic player interested in bolstering its patent portfolio which could give that party further freedom to operate in the cellulosic bio fuels space. While the Debtor's believes that its patents will ultimately have future commercial value after significant additional research and development and capital expenditures, the current patent portfolio has few if any immediate commercial applications which would increase a purchaser's sales volumes or margins. Thus, the Liquidation Analysis assumes a quick sale of the Debtor's patents to a strategic player yields approximately $1 million; which is subject to the liens and security interests of 4 groups of secured creditors which hold claims in excess of $250 million.

The DCR license was assumed to be non-transferrable (i.e., any purchaser(s) of the pilot plant units would need to negotiate a "new" DCR license). Thus, the DCR license is assumed to yield a 0% recovery.

(e) **Intercompany Receivable:** This asset class includes monies transferred from the Debtor to KCL. The intercompany receivable was assumed to yield a 0% recovery.

(f) **Equity Interest in KCL:** The Debtor's equity interest in KCL was assumed to yield a 0% recovery.

**Claims**

*Administrative Claims:*

(g) **Accrued and Unpaid Payroll:** The Liquidation Analysis projects approximately $40,000 in accrued but unpaid employee compensation and benefits (e.g., unpaid wages, withholding obligations, payroll taxes, expense reimbursements and health insurance programs) as of the Liquidation Date.

(h) **Professional Fees:** The Liquidation Analysis projects approximately $1.9 million in accrued but unpaid bankruptcy professional fees associated with the chapter 11 case for legal, consulting and investment banking fees that were to be paid in accordance with the chapter 11 bankruptcy case administration order.

**(i) Trustee Fees:** The Liquidation Analysis assumes the chapter 7 liquidation of substantially all of the Debtor's assets at the Liquidation Date. Liquidation expenses include chapter 7 trustee fees of 3% of total assets available for distribution in the amount of approximately $94,000.

*Claims:*

**(j) DIP Facility:** The Liquidation Analysis assumes that as of the Liquidation Date, the Debtor had drawn down approximately $10 million of the $15 million DIP facility that the Debtor entered into with Pasadena Investments, LLC. Approximately $1.9 million of restructuring professional fee claims (as discussed above in the Administrative Claims section) are assumed to be outstanding and unpaid as of the Liquidation Date. Additionally, $2.25 million of restructuring professional transaction fees were removed from being paid in the original DIP budget, as a conversion to a chapter 7 liquidation would preclude such fees from being paid.

**(k) Secured Claims:** As of the Liquidation Date, the amount of the Debtor's secured claims totaled more than $250 million as follows:

- **Secured Property Tax Claims:** Annual property taxes incurred for 2014 are estimated at $680,000 (based on the 2013 property tax amount). The Liquidation Analysis assumes an additional two months of property taxes will be incurred in 2015 (i.e., January and February) up to the Liquidation Date;

- **DIP Financing Claims:** The Debtor entered into that certain Senior Secured and Superpriority Financing Agreement, dated as of November 9, 2014, as approved by Orders of the Bankruptcy Court. As noted above, for purposes of this analysis, it is estimated that $10 million has been drawn;

- **First Lien:** The Debtor entered into that certain Protective Advance Loan and Security Agreement, dated as of July 17, 2014. As is noted in Schedule D of the Debtor's chapter 11 Schedules of Assets and Liabilities, the owners of the Protective Advance Loan and Security agreement have a first lien claim of approximately $16.2 million against substantially all of the Debtor's assets;

- **Second Lien:** The Debtor entered into those certain (i) Senior Secured Convertible Note Purchase Agreement, dated as of October 18, 2013 and (ii) that certain Senior Secured Promissory Note and Warrant Agreement, dated as of March 31, 2014. As is noted in Schedule D of the Debtors chapter 11 Schedules of Assets and Liabilities, the owners of these notes have second lien claims of approximately $95.7 million and approximately $10.4 million respectively; and

- **Third Lien:** The Debtor entered into that certain Loan and Security Agreement, dated as of January 26, 2012. As is noted in Schedule D of the Debtors chapter 11 Schedules of Assets and Liabilities, the owners of the Loan and Security Agreement had a third lien claim of approximately $115 million against substantially all of the Debtor's assets.

**(l) Priority Claims:** Includes approximately $110,000 of estimated 2014 and 2015 franchise and sales and use taxes due as of the Liquidation Date. These estimates were based on prior year billings from the relevant taxing authorities.

As noted in Schedule E of the Debtor's chapter 11 Schedules of Assets and Liabilities, the Debtor owes approximately $746,000 to employees stemming from paid-time-off ("PTO") accrued but not yet paid as of the petition date, approximately $219,000 of this amount is entitled to priority claim status.

As previously noted, the cessation of the business in liquidation will trigger certain additional claims that would not exist under the Plan absent a liquidation. A&M and the Debtor did not attempt to estimate any further post-petition priority claims or general unsecured claims because no funds are estimated to be available for distribution to priority or general unsecured creditors based on this analysis.

**(m) General Unsecured Claims:** Based on calculated recoveries from the Liquidation Analysis, it is assumed that there would be no proceeds available to distribute to any Unsecured Claims. As is noted in Schedule D of the Debtors chapter 11 Schedules of Assets and Liabilities, general unsecured claims total approximately $4.3

million as of the Petition Date. Additionally, approximately $527,000 of PTO accrued but not yet paid has been classified as a general unsecured claim. See **(I)** above for further information regarding the PTO claim. These amounts do not include any claims scheduled as undetermined or any deficiency claims owed to any of the secured creditors, discussed above. For example, the MDA has asserted it is owed more than $70 million which amount is not included above.